UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————————

JOHN DOE,                                          :
              Plaintiff,                           :
                                  :
              v.                                 :          No. 5:23-cv-00943
                                  :
FRANKLIN AND MARSHALL COLLEGE,                     :
              Defendant.                       :

———————————————————————————

**O P I N I O N**
**Defendant's Motion to Dismiss, ECF No. 20 – Granted in Part, Denied in Part**

**Joseph F. Leeson, Jr.**                                          **September 6, 2023**
**United States District Judge**

## I.       INTRODUCTION

Plaintiff John Doe was an undergraduate student at Defendant Franklin and Marshall College ("F&M").  In March 2022, Doe was arrested on criminal charges for an alleged sexual assault.  Within two (2) months, F&M investigated the incident, charged Doe with violations of F&M's Community Standards Sexual Misconduct Policy and Student Code of Conduct, held a disciplinary hearing, found him in violation, and suspended Doe until the fall of 2024.  Despite the open criminal charges against him, F&M refused Doe's request to stay its own investigation or to reconsider its findings when the criminal charges were dropped only days after F&M issued its suspension.  Doe alleges that during this time, he was being sexually harassed by one of his professors, but F&M failed to remedy the harassment.  The above-captioned action brings claims for violations of Title IX and for breach of contract against F&M.  Because the allegations are insufficient to state a Title IX claim, the Motion to Dismiss is granted as to these claims only.

## II.    BACKGROUND

The following facts are alleged in the Amended Complaint.

Doe was enrolled as a full-time, tuition-paying, undergraduate student-athlete at F&M beginning in 2019, with an expected graduation date of May 2023.  *See* Am. Compl. ¶¶ 13, 57. F&M is a partially federally funded private university.  *Id.* ¶ 14.  Doe was a member of F&M's baseball team and often traveled to various games throughout the country.  *Id.* ¶ 58.  Doe was a Deans List student, had a spotless record, and was never subject to discipline for misconduct of any kind until the events giving rise to the instant action.  *Id.* ¶¶ 59-60.

In March 2022, Doe traveled with F&M's baseball team to Florida to play in a series of games.  *Id.* ¶ 61.  On March 14, 2022, Doe and a number of his teammates went out to lunch after one of their games, which is when Doe met Jane Roe, who lived locally.  *Id.* ¶¶ 63-64. They spoke and exchanged telephone numbers so that they could continue talking and meet up later that night.  *Id.* ¶ 65.  That evening, Roe picked up Doe at his hotel.  *Id.* ¶ 66.  Later that evening, they engaged in consensual kissing and had a sexual encounter, which Doe alleges was all consensual.  *Id.* ¶¶ 67-68.  However, the following day, Roe went to the police and alleged that she had been sexually assaulted by Doe.  *Id.* ¶ 70.  Based on Roe's allegations, Doe was arrested on March 18, 2022.  *Id.* ¶ 71.

The F&M baseball team left Doe in jail in Florida and returned to Pennsylvania.  *Id.* ¶ 73. Doe posted bail on March 20, 2022, and reached out to his baseball coach two days later about returning to campus.  *Id.* ¶¶ 74-77.  Shortly thereafter, Doe was advised by F&M's Director of Athletics that he was suspended from the baseball team effective immediately, allegedly pursuant to the Athletic Code of Conduct and for a violation of the baseball team's rules.  *Id.* ¶¶ 78-79.  Doe was advised that the matter had been referred to Dean Shaw for F&M's "judicial process."  *Id.* ¶ 84.  Doe's criminal attorney contacted Dean Shaw to inform F&M that given the

concurrent criminal investigation, Doe would be unable to participate in F&M's investigation because requiring him to answer questions or make statements about the underlying events would impair his Fifth Amendment rights.  *Id.* ¶ 86.  Counsel asked that F&M stay its proceedings pending the outcome of the criminal investigation when Doe would be able to properly defend himself; but the request to stay was denied.  *Id.* ¶¶ 87-88.

Also during this time, Doe began receiving a series of allegedly inappropriate emails from one of his professors: Professor Eunbi Kim.  *Id.* ¶ 121.  Beginning in March 2022, when Doe returned from Florida, Professor Kim sent him numerous emails from her own personal email.  *Id.* ¶¶ 121-124.  When Doe did not respond to the emails, Professor Kim allegedly harassed Doe, insulted him, threatened self-harm if he did not respond, and retaliated against him by impacting his course grade.  *Id.* ¶ 125.  For example, she wrote:

> I know you are angry with me, [Plaintiff]. You are such an idiot. I was going to explain things to you today but I guess we will need a much longer conversation than I thought. Since you stood me up, bring me something 'hot and sweet' when you visit me for a meeting. Don't forget to get one for yourself too. If you'd like me to get fired, you can report this personal message to the school.

> I'm so sorry.  I realized that you tried to come back to campus for a meeting with me after your parents bailed you out.  I'm sorry I didn't know that you were making much effort to see me [. . .] I better understand now you went above and beyond several times to show me that you care about our relationship, making time and efforts for me.  [. . .]  I wanted to push you away until I can act much friendlier. [. . .] If I don't hear from you ever, I'll just shoot myself.

> I specifically asked you not to tell other students that I offered you the RA opportunity. Yet, you still told the students and also bad-mouthed me. I didn't have to work with me [sic]. I offered you the job because I wanted to work with you. I asked you to keep it a secret because other students already felt that I was giving too much attention and I didn't want to create any more unfairness/favoritism during class at least. That's what I wanted to explain during a meeting and that's why I sent you a personal email to ask you to wait until the end of the semester to make friends. Of course, there is a code of conduct too. . . . I'm really done with you, [Doe].  I have given you more than I should have.  I do not want any interactions with you anymore.  I'd really appreciate it if you just withdrew from the class . . . It's really a shame.  I really liked you as a person and wanted to make friends with you after the class is done.

*Id.* ¶¶ 127, 140, 146.  On April 3, Professor Kim wrote: "I am willing to grade your pitch **IF** you have reflected on your misbehavior in class and agree to act professionally and respectively. Please think about it and let me know." *Id.* ¶ 141 (emphasis in original).  The following morning at 6:05 a.m., Professor Kim emailed Doe: "You can decide whether you'd like to submit the rest of the course requirements. I will just give you an A, that seems to matter to you. I am done with myself hating and being angry at you too." *Id.* ¶ 142.  Professor Kim sent Doe additional emails that day at 1:58 p.m., 5:11 p.m., and 11:45 p.m.. *Id.* ¶¶ 143-146.

On April 4, 2022, Doe's father spoke with Dean Shaw regarding his concerns about the emails. *Id.* ¶ 148.  The same day, Doe's mother had several phone calls with Dr. Amelia Rauser, the Senior Associate Dean of the Faculty, regarding the harassing emails. *Id.* ¶ 149.  Dr. Rauser requested copies of the emails and suggested that Doe block Professor Kim's email. *Id.* ¶¶ 150-151.  The next day, Dr. Rauser stated that she would get another one of Doe's current professors to help him finish Professor Kim's class. *Id.* ¶ 152.  On April 6, 2022, Dr. Katharine Snider, F&M's Title IX Coordinator, sent Doe an email requesting to meet and discuss the emails, to which he responded that he would rather communicate via email. *Id.* ¶ 153.  On April 7, 2022, Dr. Snider sent Doe an email with multiple questions regarding the emails, which he answered. *Id.* ¶ 154.  On April 12, 2022, Doe received an additional email from Professor Kim stating:

> Your friend told me you said to them that you did it but I don't believe you or him. You probably just wanted to bluff because of your performance at the game that day. . . . Stay calm and strong when people turn their back on you. Sometimes, time will help. . . . And you promised me that you would take me to the construction site. I cannot hang out with you if the record says you are a rapist. -_- Defense is much more difficult than offense in most cases but you still need to 'proactively' defend yourself. Hope you have hired a good lawyer who can do that on your behalf. I really need to see the construction site. I've never  been to those places and haven't seen people building things. Keep the promise in the summer, okay? . . .

*Id.* ¶ 159.  It was not until March 8, 2023, that Doe received a notice of a "judicial hearing" to be held for the matter.  Am. Compl. ¶ 163.  No disciplinary action, before or after the hearing, was taken against Professor Kim.  *Id.* ¶¶ 156-157, 226.

On April 22, 2022, Doe received formal notice that F&M was charging him with three violations of the Community Standards Sexual Misconduct Policy ("CSSMP"): (1) Sexual Contact Without Consent; (2) Sexual Penetration Without Consent; and (3) Sexual Assault; and (4) a violation of the Student Code of Conduct ("SCC") for a violation of federal, state, or local statutes, codes, or regulations.  *Id.* ¶¶ 90-92.  A hearing on the matter was scheduled for May 3, 2022, which was in the middle of finals week and within hours of one of Doe's finals.  *Id.* ¶ 93. On April 24, 2022, Doe's attorney emailed Dean Shaw requesting that the hearing be stayed pending the conclusion of the criminal investigation so that Doe could participate in the proceedings.  *Id.* ¶ 96.  Counsel also advised Dean Shaw that the SCC charge alleging Doe engaged in sex with a minor was improper because under applicable Florida law, Roe was legally able to consent.  *Id.* ¶ 97.  F&M refused to stay the proceedings or drop any charges.  *Id.* ¶ 98.  The hearing was conducted in Doe's absence on May 3, 2022.  *Id.* ¶ 99.  Three days later, Doe received a Decision Letter stating that he had been found responsible for all four allegations against him and was sanctioned to a suspension until the Fall of 2024.  *Id.* ¶ 101.

On May 10, 2022, four days after the Decision Letter, Plaintiff received a "no bill" from the Florida State Attorney's Office, meaning that the case was dropped due to a lack of sufficient evidence.  *Id.* ¶ 110.  Doe's attorney emailed Dean Shaw regarding this new evidence, and timely appealed the finding and sanction.  *Id.* ¶¶ 112-113.  Despite his requests, Doe has never been provided with a transcript of the May 3, 2022 hearing.  *Id.* ¶ 99.  On May 24, 2022, Doe's attorney emailed the Dean of Student Affairs for an update on the appeal and, the following day, was advised that the appeal had been denied because Doe had not presented any new evidence.

*Id.* ¶¶ 115-116.  On May 27, 2022, Doe's attorney contacted Dean Shaw expressing

disappointment in F&M's handling of the matter- mishandled investigation, refusal to stay

during the criminal investigation so Doe could defend himself, reliance on one-sided evidence,

and failure to reconsider despite the no bill from the Florida State Attorney's Office, but received

no response.[1]  *Id.* ¶ 117.

     The Amended Complaint further asserts that F&M's policies (CSSMP, SCC, and Title IX

Policy) constituted a contract between F&M and its students, including Doe.  *See* Am. Compl. ¶¶

166-168.  Doe alleges that F&M, by its actions and inactions just discussed, breached these

policies and therefore breached its contract with Doe.  *See id.* ¶¶ 177-179.  Specifically, the

CSSMP states that students have "[t]he right to an objective evaluation of all relevant evidence.

The parties will be provided with an equal opportunity to inspect and review any evidence

obtained as part of the investigation that is directly related to the allegations raised in a

complaint."  *Id.* ¶ 172.  Despite his requests, Doe has never been provided with F&M's

investigation report.  *Id.* ¶¶ 95, 173.  Doe also alleges that F&M breached the CSSMP because it

did not have jurisdiction to investigate the alleged sexual assault against someone (Roe) with no

connection to F&M.  *Id.* ¶ 171.  The SCC states that prohibited acts include "violation of federal,

state, or local statutes, codes, or regulations."  *Id.* ¶ 174.  Doe was charged and found responsible

for engaging in sex with a minor even though applicable Florida law provided that Roe was

legally able to consent.  *Id.* ¶¶ 97, 175.  The SCC also promises students a "balanced and fair

resolution process" in investigating and adjudicating allegations of sexual misconduct."  *Id.* ¶

---

[1]    Doe complains, *inter alia*, that F&M never interviewed Roe and that its decision was based on a one-sided police report, which quoted only a few words from a fourteen-minute controlled call between he and Roe and was completely silent as to the one-hour conversation Doe had with police denying Roe's allegations.  Am. Compl. ¶¶ 104-106.  Doe further contends that Roe did not want her boyfriend to find out about her sexual encounter with Doe and therefore lied to police.  *Id.* ¶ 69.

176.  The Title IX Policy states "[a]ny person may report conduct constituting possible Prohibited Conduct to the Title IX Coordinator," who "will promptly contact the Complainant to discuss the availability of Supportive Measures . . . and to explain the process for filing a Formal Complaint."  *Id.* ¶ 180.  At no point, did Dr. Snider nor any administrator at F&M offer Doe supportive measures or explain the process of filing a formal complaint.  *Id.* ¶¶ 155, 181.  The Title IX Policy also provides that "Informal resolution is not available to resolve a student-Complainant's allegations that an employee has engaged in Title IX Sexual Harassment."  *Id.* ¶ 182.  F&M advised Doe that the sexual harassment allegations against Professor Kim had been "dealt with internally" and never informed him of actions taken against Professor Kim, if any.  *Id.* ¶¶ 162,  183.

F&M filed a Motion to Dismiss arguing that Doe failed to state a claim.  Doe responded by filing an Amended Complaint.  F&M has filed a Motion to Dismiss the Amended Complaint raising essentially the same alleged deficiencies.  *See* Mot., ECF No. 20.  F&M argues, *inter alia*, that: (1) the erroneous outcome claim fails because Doe does not allege any particular circumstances that suggest F&M's final determination was motivated by gender bias; (2) the selective enforcement claim fails because Doe failed to present plausible comparators; (3) the deliberate indifference claim fails because Professor Kim's alleged conduct was not severe, pervasive, and objectively offensive and, also, because F&M's response was not clearly unreasonable; and (4) the breach of contract claim fails because Doe fails to allege facts that show F&M breached any material terms of its policies.

## III.   LEGAL STANDARDS

### A.   Motions to Dismiss under Rule 12(b)(6) – Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  "[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. [W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 555 n.3). *See also* Fed. R. Civ. P. 8(a) (requiring the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief").  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).  *See also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be

granted.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**B.      Title IX – Review of Applicable Law**

The relevant portion of Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  The courts have identified at least four (4) distinct theories under which one may allege a Title IX violation: (1) erroneous outcome; (2) selective enforcement; (3) deliberate indifference; and (4) archaic assumptions.  *See Doe v. Univ. of the Scis.*, 961 F.3d 203, 209 (3d Cir. 2020).  "Although parties are free to characterize their claims however they wish," the Third Circuit Court of Appeals "see[s] no need to superimpose doctrinal tests on the Title IX statute."  *Id.* (internal quotations omitted).  Rather, "to state a claim under Title IX, the alleged facts, if true, must support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex."  *Id.* (adopting a "straightforward pleading standard").  Nevertheless, the Third Circuit has continued to analyze Title IX claims according to the more specific theories if that is how the parties have characterized them.  *See Doe v. St. Joseph's Univ.*, 832 F. App'x 770, 773-75 (3d Cir. 2020).

**C.      Breach of Contract Involving Private Schools – Review of Applicable Law**

"Under Pennsylvania law, three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms[;] (2) a breach of the contract; and[ ] (3) resultant damages."  *Univ. of the Scis.*, 961 F.3d at 211 (cleaned up).  A "contract is formed when the parties (1) reach a mutual understanding, (2) exchange consideration, and (3) delineate the terms of the bargain with sufficient clarity."  *Tuff Wrap Installations Inc. v. Cleanwrap, Inc.*, No. 11-2576, 2011 U.S. Dist. LEXIS 70543, at *18 (E.D.

Pa. June 29, 2011) (citing *Weavertown Transport Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003)).

In Pennsylvania, "the relationship between a student and a private educational institution is contractual." *Brezinski v. Widener Univ.*, 582 F. Supp. 3d 257, 265 (E.D. Pa. 2022). "The contract between a private institution and a student is comprised of written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Kimberg v. Univ. of Scranton*, No. 3:06CV1209, 2007 WL 405971, at *3 (M.D. Pa. Feb. 2, 2007) (citation omitted). "A student can bring a cause of action against [a private educational institution] for breach of contract where the institution ignores or violates portions of the written contract. *Id.* (citation omitted).

## IV. ANALYSIS

Since the Amended Complaint includes separate causes of action alleging distinct theories of liability under Title IX, each claim will be analyzed according to the specific theory alleged. *See St. Joseph's Univ.*, 832 F. App'x at 773-75.

### A. Doe fails to state an erroneous outcome claim under Title IX.

"An erroneous outcome challenge to university disciplinary proceedings requires a plaintiff to plead (1) 'particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding,' and (2) 'particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.'" *Verdu v. Trustees of Princeton Univ.*, No. CV 19-12484 (FLW), 2020 WL 1502849, at *4 (D.N.J. Mar. 30, 2020), *aff'd*, No. 20-1724, 2022 WL 4482457 (3d Cir. Sept. 27, 2022) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). "Mere allegations a flawed proceeding led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination does not

satisfy an erroneous outcome claim." *Saravanan v. Drexel Univ.*, No. 17-3409, 2017 U.S. Dist. LEXIS 193925, at *9 (E.D. Pa. Nov. 24, 2017) (internal quotations omitted).

Doe has pled sufficient factual allegations that cast doubt on the accuracy of the disciplinary proceedings.  Specifically, F&M, despite information showing that Roe may have had a motive to lie, relied solely on police reports that contained Roe's version of the events, but did not include the full statements Doe gave to police contesting her account.  F&M did not interview Roe and its investigation did not include any information from Doe because F&M refused to stay the proceedings until the criminal case was concluded.  Additionally, the Amended Complaint alleges that F&M charged Doe with engaging in sex with a person under the statutory age of consent even though Roe was legally able to consent under state law.  F&M nevertheless found Doe responsible for this and all other charges even though Florida ultimately refused to prosecute.

Regardless, Doe has failed to allege particular circumstances suggesting that F&M's alleged erroneous outcome was motivated by gender bias.  "[S]pecific allegations of procedurally flawed proceedings coupled with conclusory allegations of gender discrimination are not sufficient to survive a motion to dismiss.  A plaintiff must also plead facts to support its allegation that gender bias was a motivating factor behind the defendant's actions." *Doe v. Rider Univ.*, No. 3:16-CV-4882, 2018 WL 466225, at *9 (D.N.J. Jan. 17, 2018) (citation omitted).  The allegations of particular circumstances suggesting gender bias that would survive a motion to dismiss "might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 823 (E.D. Pa. 2017) (citation omitted).

In this case, Doe alleges that discrimination against males was the motivating factor behind F&M's actions and the erroneous outcome and cites to three general categories of evidence: (1) federal pressure on F&M to adopt policies which discriminate against males, as well as pressure from the leadership, student body, and media; (2) selective enforcement with regards to a female professor; and (3) selective enforcement with regards to another female student.  First, Doe alleges that the "April 4, 2011 Dear Colleague Letter" from the Department of Education, as well as the 2014 *Not Alone* report from the White House warning schools that they would lose federal funds if they violated Title IX, both placed pressure on F&M to aggressively pursue sexual misconduct complaints, allegedly limiting the "procedural protections afforded to males."  *See* Am. Compl. ¶¶ 18-27.  Doe alleges that the Department of Education [DoEd] conducted an investigation of F&M's handling of sexual misconduct complaints in 2014, adding further evidence that F&M in particular felt pressured.  *Id.* ¶ 27.  Doe alleges F&M faced additional pressure from its former president, who was an "advocate for survivors of sexual assault" and encouraged a "come forward" culture. *Id.* ¶ 38.  Doe alleges that F&M hosted an annual "take back the night" rally and that students started a petition to expel a certain F&M fraternity. *Id.* ¶¶ 39-40.  Doe asserts that due to media coverage of the allegations against him, F&M felt pressure to use Doe as an example of its dedication to taking sexual assault allegations seriously.  *Id.* at ¶¶ 42-44.

These allegations support the finding that F&M felt pressured to implement and enforce policies prohibiting sexual assault generally, but do not show that application thereof was motivated by gender.  In fact, aside perhaps from the petition to expel a certain fraternity and the "take back the night" rallies, the pressure to eliminate sexual assault was gender neutral.  *See Rider Univ.*, 2018 WL 466225, at *10 (concluding that "allegations of a bias against the alleged

perpetrator in favor of the victim is insufficient to show an inference of gender bias").  Even the petition to expel the fraternity could have been based, not on the gender of the fraternity, but on its members' alleged tendency to commit sexual misconduct.  *See id.* ("demonstrating a bias against students accused of sexual assault is not the equivalent of demonstrating a bias against males, even if all of the students accused of assault were male").  Similarly, in the article cited in the Amended Complaint about the "take back the night" rallies, the director of the Alice Drum Women's Center at F&M is quoted as saying: "Take Back the Night is an internationally held march and rally that was initially intended to protest the violence women experienced while walking in public at night. This movement has now grown to encompass all forms of violence against *all persons*."  *See* Am. Compl. ¶ 39 (citing Katir E. Machen, Franklin & Marshall Community 'Took Back the Night' from Violence, Franklin and Marshall News (Apr. 12, 2018), available at https://www.fandm.edu/news/latestnews/2018/04/12/franklin-marshall-community-took-back-the-night-from-violence) (emphasis added).  Moreover, allegations of pressure alone are insufficient to support a Title IX claim.  *See Univ. of the Scis.*, 961 F.3d at 210 (holding that "allegations about pressure from DoEd and the 2011 Dear Colleague Letter cannot alone support a plausible claim of Title IX sex discrimination").  Doe's allegations of pressure are therefore insufficient to show that the allegedly erroneous outcome of the investigation and/or disciplinary proceedings was motivated by bias against Doe's gender.  *See St. Joseph's Univ.*, 832 F. App'x at 774 (concluding that despite allegations the school faced internal and/or external pressure, the plaintiff offered no facts to show the school's inadequate investigation was motivated by gender bias).

For the reasons discussed in the next section, Doe's allegations regarding selective enforcement also fail to show that gender bias was a motivating factor in the alleged erroneous

outcome of his disciplinary proceedings.  *Accord Univ. of the Scis.*, 961 F.3d at 203 (concluding

that the plaintiff's allegations of pressure on the university when, and only when, combined with

*plausible* allegations of selection enforcement were sufficient to state a Title IX claim).

  **B.**  **The allegations do not show selective enforcement.**

  "Under a selective enforcement theory, a plaintiff 'asserts that, regardless of the student's

guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was

affected by the student's gender.'"  *Verdu*, 2020 WL 1502849, at *6 (quoting *Yusuf*, 35 F.3d at

715).  "To prevail under this theory, [a male plaintiff] must identify a similarly situated female

student treated less harshly."  *St. Joseph's Univ.*, 832 F. App'x at 773.  "Although a plaintiff

need not show an exact match between himself and the comparator, he must show a sufficient

similarity."  *Verdu v. Trustees of Princeton Univ.*, No. 20-1724, 2022 WL 4482457, at *5 (3d

Cir. Sept. 27, 2022), *cert. denied*, 215 L. Ed. 2d 51 (2023).  The plaintiff "must also allege

particular circumstances suggesting that gender bias was a motivating factor behind the

inconsistency."  *The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d at 824 (cleaned up).

  Here, Doe alleges that F&M treated two female comparators: (1) a female professor and

(2) an arrested female student, more leniently than it treated him.  *See* Am. Compl. ¶¶ 210–221.

    **1.**  *Professor Kim is not a valid comparator.*

  A professor and an undergraduate/graduate student "hold unquestionably different roles

and levels of authority" and are not "sufficiently alike to be considered valid comparators."  *Id.*

Professor Kim, who holds a different role and possesses a different level of authority to Doe, an

F&M student, is therefore not a valid comparator.  Moreover, a valid comparator must "have

engaged in the same conduct without differentiating or mitigating circumstances."  *See Lei Ke v.

Drexel Univ.*, No. 11-6708, 2015 U.S. Dist. LEXIS 118211, at *59 (E.D. Pa. Sep. 4, 2015).

Professor Kim's alleged misconduct (verbal sexual harassment via email) is clearly not the same as the alleged physical sexual assault by Doe.  Because there were no criminal charges or even an official complaint filed against Professor Kim, unlike the charges and official complaint against Doe, the circumstances are also different.  Consequently, Professor Kim is not a valid comparator so as to establish that F&M treated Doe differently because he is male.

### 2.   *The arrested female student is not a valid comparator.*

"To consider a student similarly situated, the individuals with whom a plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [school's] treatment of them for it." *Verdu*, 2020 WL 1502849, at *6 (internal quotations and citations omitted).  Although the arrested female student and Doe hold similar roles at F&M, that is where the similarities end. The conduct for which Doe and the female student were arrested is vastly different.  The female student was arrested for "felony[2] arson, institutional vandalism, riot, failure to disperse, obstructing highways and other public passages, disorderly conduct, and defiant trespass."  *See* Am. Compl. ¶ 51.  These "Offenses Against Property" and "Public Order," *see* 18 Pa.C.S. Chs. 33 and 55, are in stark contrast to "sexual battery" of a juvenile female, for which Doe was arrested.[3]  Consequently, the female student was not engaged in the "same" conduct to be a valid comparator to Doe.  *Accord Univ. of the Scis.*, 961 F.3d at 211 (concluding that the plaintiff plausibly alleged that sex was a motivating factor where the school chose to investigate a male

---

[2]     Doe's allegation that the female student pled guilty to the "felonies" is belied by the public record.  *See* CP-36-CR-0004478-2020 (Lancaster County filed Oct. 16, 2020) (showing that the student pled guilty to misdemeanor charges for failing to disperse, obstructing highways, disorderly conduct, and defiant trespass, only).

[3]     The Florida statutes do not separate crimes based on the nature of the offense, but the comparable charge in Pennsylvania is defined as "Offenses Involving Danger to the Person." *See* 18 Pa.C.S. Ch. 31.

student for engaging in sexual activity without affirmative consent, but not a female student for engaging in the same sexual behavior).

Additionally, unlike the pressure F&M faced to aggressively pursue sexual misconduct complaints, like the one against Doe, students pressured F&M's president to support the female student.[4]  This pressure offers differentiating and mitigating circumstances to explain why F&M may have prosecuted Doe's case more zealously than the female student.  *See Doe v. Manor Coll.*, 479 F. Supp. 3d 151, 174 (E.D. Pa. 2020) (finding that a male student that took a photograph during a sex act was not a sufficient comparator to the plaintiff, who recorded a sex act, because the comparator's conduct occurred during a consensual act, as opposed to the plaintiff's recording being made without the consent of the person being recorded).  Notably too, the Amended Complaint offers no information about the comparative academic records of Doe and the female student.  *See Lei Ke*, 2015 U.S. Dist. LEXIS 118211, at *59 (stating that "any comparator for purposes of establishing that [the university] treated similarly situated students differently must have similar academic records to Plaintiff and have engaged in the same conduct without differentiating or mitigating circumstances").  For all these reasons, the female student is not a valid comparator.

In the absence of a valid comparator, the Amended Complaint fails to state a claim for selective enforcement and/or erroneous outcome under Title IX.  Counts One and Two are dismissed.

---

[4]      The Amended Complaint cites an article stating: "Students who pushed [F&M's president] to support [the female student] said she was wrongfully charged and was present at the riot only to serve as a medic."  Am. Compl. ¶ 27 (citing Tim Stuhldreher, *Education Dept. officials convene focus groups in Title IX investigation at Franklin & Marshall*, Lancaster Online (Apr. 22, 2015), available at https://lancasteronline.com/news/local/education-dept-officials-convene-focusgroups-in-title-ix-investigation-at-franklin-marshall/article_02e6adb6-e93d-11e4-a49d070c58af0e0a.html).

**C.      The allegations do not establish that F&M was deliberately indifferent.**

"The Supreme Court has held that sexual harassment of a student by a teacher can

constitute discrimination on the basis of sex." *Chancellor v. Pottsgrove Sch. Dist.*, 529 F. Supp.

2d 571, 574–75 (E.D. Pa. 2008). "To assert a claim of discrimination on the basis of deliberate

indifference, a plaintiff must show that

> (1) the defendant received federal funds; (2) sexual harassment occurred; (3) the
> harassment took place under circumstances in which the school exercised
> substantial control over both the harasser and the context in which the harassment
> occurred; (4) the defendant had actual knowledge of the harassment;[5] (5) the
> harassment was so severe, pervasive, and objectively offensive that it could be said
> to have deprived the victim of access to the educational opportunities or benefits
> provided by the school; (6) the defendant was deliberately indifferent to the
> harassment; and (7) the defendant's deliberate indifference subjected the plaintiff
> to harassment, i.e. caused the plaintiff to undergo harassment or made the plaintiff
> liable or vulnerable to it.

*Manor Coll.*, 479 F. Supp. 3d at 162. Elements (1), (3), and (4) are not contested here.

### *1.     Doe has alleged sexual harassment occurred.*

"The gravamen of any sexual harassment claim is that the alleged sexual advances were

unwelcome." *Chancellor*, 529 F. Supp. 2d at 575 (internal quotation and citation omitted).

Doe's allegations that he did not respond to Professor Kim's allegedly inappropriate e-mails,

coupled with allegations that Doe's parents reported the emails as harassment to F&M's Senior

Associate Dean of Faculty, is sufficient to show that the e-mails were unwelcome. *See* Am.

Compl. at ¶¶ 120–150.

Whether the emails should be construed as *sexual* harassment can best be determined by

analogy to the Supreme Court's discussion of what counts as sexual harassment in the Title VII

---

[5]      A "recipient of federal funds may be liable in damages under Title IX only for its own
misconduct." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640 (1999). Title IX does not
"permit a damages recovery against a school [] for a teacher's sexual harassment of a student
based on principles of respondeat superior or constructive notice, i.e., without actual notice to a
school district official." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998).

context.  In *Oncale v. Sundowner Offshore Servs., Inc.*, the Court held that "[c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex."  523 U.S. 75, 80 (1998).  Although the Amended Complaint does not indicate that Professor Kim ever made an explicit proposal of sexual activity to Doe, some of her statements may, after drawing all reasonable inferences in Doe's favor, be construed as implicit proposals of sexual activity.  Specifically, Professor Kim wrote to Doe: ". . . Since you stood me up, bring me something 'hot and sweet' when you visit me for a meeting . . . ."  Am. Compl. ¶ 127.  Her emails, which were written from her personal email account and sometimes sent late at night, sounded more like a girlfriend writing to a boyfriend than a professor emailing one of her students.  *See, e.g. id.* ¶¶ 127, 140, 146.  Drawing all inferences in favor of Doe, Professor Kim's emails suggested implicit proposals of future increased intimacy, and it is unlikely that proposals of this nature would have been made to someone of the same sex.

It can also be plausibly inferred that Professor Kim made decisions about Doe's education based in part upon her perceptions that Doe had jilted her or rejected her advances. *See* 34 C.F.R. § 106.30 ("Sexual harassment means conduct on the basis of sex that satisfies one or more of the following: (1) An employee of [F&M] conditioning the provision of an aid, benefit, or service of [F&M] on an individual's participation in unwelcome sexual conduct. . . ."). On April 1, 2022, Professor Kim sent Doe an email stating: ". . . I have given you more than I should have.  I do not want any interactions with you anymore.  I'd really appreciate it if you just withdrew from the class . . . ."  Am. Compl. ¶ 140.  Two days later, she wrote: "I am willing to grade your pitch **IF** you have reflected on your misbehavior in class and agree to act

professionally and respectively. Please think about it and let me know." *Id.* ¶ 141 (emphasis in original).

For the purposes of a motion to dismiss, it is plausible that Professor Kim sexually harassed Doe.

        **2.**      ***The sexual harassment was sufficiently severe, pervasive, and offensive.***

In determining whether sexual harassment is "severe, pervasive, and objectively offensive" the court considers the following factors: "the frequency of the offensive conduct; the nature of the unwelcome sexual acts or words, for example, whether the harassment was physical, verbal or both; whether the harassment was merely an offensive utterance; and the relationship between the parties." *Chancellor*, 529 F. Supp. 2d at 575.  The Amended Complaint cites to allegedly inappropriate emails (verbal harassment only) dated March 21, 24, and 31, 2022, and April 1, 3, and 4, 2022.  On April 4, 2022, Professor Kim sent Doe four (4) emails at 6:05 a.m., 1:58 p.m., 5:11 p.m., and 11:45 p.m., three of which were from her personal email address.  *See* Am. Compl. ¶¶ 142-146.  Considering the frequency and timing of Professor Kim's contact, coupled with the relationship between the parties, *see Chancellor*, 529 F. Supp. 2d at 575 (holding that "teacher-student harassment is more likely to violate Title IX than student-student harassment" (citation omitted)), and Professor Kim's repeated academic references (Doe's RA position, telling Doe to withdraw from class, Professor Kim's ability to control Doe's grades, etc.), the Amended Complaint has alleged sexual harassment "that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the [Doe's] educational experience," *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 651 (1999).

### 3. *Doe fails to show that F&M's alleged deliberate indifference subjected him to harassment.*

Doe must also allege facts showing that F&M was deliberately indifferent to Professor Kim's sexual harassment. A school is "deemed 'deliberately indifferent' to acts of [] harassment only where the [school's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. To amount to deliberate indifference, the school, after having notice of the harassment, must have made "an official decision . . . not to remedy the violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Davis*, 526 U.S. at 642 (explaining that a school "could be liable for damages only where the [school] itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge"). "The relevant inquiry for purposes of evaluating whether [F&M] was deliberately indifferent to known circumstances of harassment is to review its response to reported incidents of harassment." *Doe v. Bellefonte Area Sch. Dist.*, 106 F. App'x 798, 800 (3d Cir. 2004). Additionally, Doe must show that F&M's clearly unreasonable response subjected him to harassment, by either causing him to undergo harassment or making him vulnerable to it. *See Manor Coll.*, 479 F. Supp. 3d at 162.

F&M first became aware of the allegedly harassing emails from Professor Kim to Doe on April 4, 2022, when Doe's parents reached out to Dean Shaw and Dean Rauser.[6] That day, Dean Rauser asked for copies of Professor Kim's emails and recommended that Doe block Professor Kim's email. The next day, Dean Rauser advised that she would have another one of Doe's professors help him finish Professor Kim's class. Two days after the initial report, on April 6,

---

[6]     As per F&M's Title IX policy, Dean Shaw is an "Authorized Employee," to whom disclosure of prohibited conduct constitutes a report to the Institution and thereby actual knowledge of F&M. *See* Ex. 2 at 6-7, ECF No. 20.

2022, F&M's Title IX Coordinator reached out to Doe asking to meet and discuss the emails. When Doe declined to meet in person, F&M's Title IX Coordinator sent multiple questions to Doe about the emails.  These factual allegations show that F&M immediately took steps to protect Doe from future harassment by assigning another professor to help Doe finish Professor Kim's class and acted promptly to investigate the alleged harassment.  *See Doe v. N. Penn Sch. Dist.*, No. CV 20-5142, 2022 WL 10789493, at *7 (E.D. Pa. Oct. 19, 2022) (explaining that a "reasonable response includes a prompt inquiry into the matter").  Although this Court questions why it took F&M almost a year to hold a hearing regarding Professor Kim's conduct, the allegations are insufficient to show that F&M made an "official decision" not to remedy the alleged harassment.  *Accord Hall v. Millersville Univ.*, 22 F.4th 397, 411 (3d Cir. 2022) (refusing to conclude that the university's response to a report that one of its student's was assaulted by her boyfriend on campus was not clearly unreasonable where the university did not follow its own Title IX policy and forward the report to the Title IX coordinator, did not discuss the report with anyone, did not file a police report, did not contact the victimized student, and, instead, informed a complaining parent[7] that nothing could be done).

The Amended Complaint also fails to show that F&M's alleged deliberate indifference subjected Doe to harassment.  After F&M was on notice of the alleged harassment, Doe received one additional email from Professor Kim approximately a week later.  Had Doe blocked Professor Kim's personal email account as Dean Rauser recommended however, he would not have received the email.  Moreover, no disciplinary action by F&M could have prevented Professor Kim from sending this email because F&M had no control over her personal email account.  Doe complains that F&M did not suspend Professor Kim or take other corrective

---

[7]     The roommate of the assaulted student informed her own mother of the victim's assault, and the roommate's mother contacted the university.

action, but schools are "not required to . . . engage in particular disciplinary action." *See Manor Coll.*, 479 F. Supp. 3d at 162 (cleaned up).  Although Professor Kim's hearing was inexplicably delayed, it did not make Doe vulnerable to harassment because he was not attending F&M during the 2022-2023 school year in light of his own suspension.  Doe's allegation that he was not offered supportive measures or explained the process of filing a formal complaint, is also insufficient to state a claim because a deviation from a Title IX policy is not in and of itself, a violation of Title IX.  *See Gebser*, 524 U.S. at 291-92.

The Amended Complaint does not sufficiently allege that F&M's response to Professor Kim's sexual harassment was clearly unreasonable or that, if it was, Doe was subjected to harassment as a result.  Count III is dismissed.

> **D.**      **Doe has stated a claim for breach of contract.**

For the reasons previously explained, the Amended Complaint contains sufficient allegations that cast doubt on the accuracy of F&M's disciplinary findings.  These allegations also support Doe's claim that F&M's investigation and disciplinary proceedings breached the CSSMP and SCC, which promise, *inter alia*, an "objective evaluation of all relevant evidence," an "opportunity to inspect and review any evidence,"  and a "balanced and fair resolution process."  Although the allegations are insufficient to state a claim under Title IX, Doe's allegations that F&M failed to follow Title IX Policy do state a claim for breach of contract.  The Motion to Dismiss Count IV is therefore denied.

**V.**     **CONCLUSION**

The Amended Complaint fails to sufficiently allege that F&M's actions or inactions were motivated by gender bias.  The Title IX claims in Counts I and II are therefore dismissed.  The allegations are also insufficient to show that F&M's response to Doe's sexual harassment complaint against his professor was clearly unreasonable or, even if it were, that he was

subjected to harassment because of F&M's deliberate indifference.  Count III is also dismissed.

All Title IX claims are dismissed with prejudice.[8]  The Amended Complaint has stated a claim

for breach of contract and the request to dismiss Count IV is denied.

      A separate order follows.

                    BY THE COURT:

                    */s/ Joseph F. Leeson, Jr.*_____
                    JOSEPH F. LEESON, JR.
                    United States District Judge

---

[8]      Although a *pro se* plaintiff should normally be given an opportunity to file a curative amendment, *see Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002), Doe is represented by counsel.  Moreover, leave to amend need not be granted where an "amendment would be inequitable or futile."  *Id.*  Prior to filing the Amended Complaint, Doe was advised of the alleged deficiencies in the pleadings from F&M's first motion to dismiss.  Accordingly, Doe had an opportunity, but failed, to allege sufficient facts to support its Title IX claims and further leave to amend would be futile.