**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| John Doe, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 5:23-cv-00943-JFL |
| | : | |
| v. | : | |
| | : | |
| Franklin & Marshall College, | : | Electronically Filed |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FRANKLIN &
MARSHALL COLLEGE'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

RELEVANT PROCEDURAL HISTORY ................................................................................ 3

SUMMARY OF STATEMENT OF UNDISPUTED FACTS ................................................... 4

LEGAL STANDARD............................................................................................................. 7

ARGUMENT ........................................................................................................................ 8

    I.    Plaintiff's Title IX sex discrimination claim fails as a matter of law because there are no facts that support a reasonable conclusion that the outcome of Plaintiff's proceeding was influenced by Plaintiff's sex. ........................................................................... 8

        a.    The College's adjudication process, both as applied to Plaintiff and generally, does not demonstrate sex bias................................................................. 10

        b.    The College's decision to proceed with the resolution process absent Plaintiff's participation does not demonstrate sex bias.......................................... 13

        c.    Plaintiff has presented no evidence that the Decision Letter was not supported by a preponderance of the evidence.................................................... 14

        d.    Plaintiff has developed no evidence that the College did not adequately consider his appeal. ............................................................................................ 14

        e.    Plaintiff has not shown the College uses a trauma-informed approach or that such an approach is a Title IX violation............................................................. 15

        f.    College employees supporting female empowerment does not demonstrate institutional bias ............................................................................................ 15

        g.    Plaintiff has developed no facts establishing that the College experienced external pressure that impacted the outcome of Plaintiff's case.......................... 16

        h.    Plaintiff fails to identify appropriate comparator evidence. ................................ 17

    II.    The College's processes used to adjudicate Roe's complaint did not constitute a breach of contract.......................................................................................................... 18

        a.    The College did not breach the SCC because it had jurisdiction to adjudicate Jane Roe's claim against Plaintiff. ...................................................................... 19

        b.    The Administrative Review Process does not involve the creation of an investigation report or an opportunity to review the evidence. ........................... 20

        c.    The College did not breach the SCC because Plaintiff engaged in conduct that violated the law. .......................................................................................... 22

    III.    Plaintiff's Title IX Claim regarding the College's response to his report of harassment against Professor Kim fails because the College was not deliberately indifferent to any report of actionable harassment........................................................................... 23

    IV.    The College's response to Plaintiff's report concerning Dr. Kim does not constitute a breach of contract. ................................................................................................. 26

CONCLUSION..................................................................................................................... 28

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006)............................................................8

*Bleiler v. Coll. of the Holy Cross*, No. 11-11541, 2013 WL 4714340
    (D. Mass. Aug. 26, 2013)........................................................................................................15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................7, 8

*CONRAIL v. Foster Wheeler Envt'l. Corp.*, 2000 WL 1367943 (E.D. Pa. Sept. 20, 2000)..........22

*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999)............................................................23

*Doe v. Brown Univ.*, 166 F. Supp. 3d 177 (D.R.I. 2016)..............................................................16

*Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018)......................................................................16

*Doe v. N. Penn Sch. Dist.*, No. 20-5142, 2022 U.S. Dist. LEXIS 190610
    (E.D. Pa. Oct. 19, 2022)..........................................................................................................24

*Doe v. Rider Univ.*, No. 3:16–cv–4882–BRM–DEA, 2018 WL 466225
    (D.N.J. Jan. 17, 2018)............................................................................................................17

*Doe v. St. Joseph's Univ.*, Civ. No. 18-2044, 2019 WL 13246870
(E.D. Pa. Apr. 23, 2019) ...................................................................................... *passim*

*Doe v. Trs. of Boston College*, 892 F.3d 91 (1st Cir. 2018) ...........................................................2

*Doe v. Trs. of Princeton Univ.*, 2020 WL 7397804 (D.N.J. Feb. 28, 2020).................................16

*Doe v. Trs. of Univ. of Pa.*, 270 F. Supp. 3d 799 (E.D. Pa. 2017).................................................17

*Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064 (D. Colo. May 26, 2017) .......................................16

*Doe v. Univ. of Sciences*, 961 F.3d 203 (3d Cir. 2020) ..................................................................8

*Gendia v. Drexel Univ.*, 2020 WL 5258315 (E.D. Pa. Sept. 2, 2020)...........................................13

*Haidak v. Univ. of Mass. at Amherst*, 299 F. Supp. 3d. 242 (D. Mass. 2018)................................2

*Kimberg v. Univ. of Scranton*, No. 06-cv-1209, 2007 WL 405971 (M.D. Pa. Feb. 2, 2007)........18

*Messeri v. Univ. of Colo.*, No. 18-cv-2658-WJM-SKC, 2019 WL 4597875
    (D. Colo. Sept. 23, 2019)........................................................................................................15

*Mikail v. PAM Mgmt.*, 2017 WL 1344676 (M.D. Pa. Apr. 12, 2017) ..........................................22

*Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639 (E.D. Pa. 2012)............................18

*Norris v. Univ. of Colorado, Boulder*, 362 F. Supp. 3d 1001 (D. Colo. 2019) ............................15

*Powell v. St. Joseph's Univ.*, CIVIL ACTION NO. 17-4438, 2018 WL 994478 (E.D. Pa. Feb. 20, 2018) ............................................................................................................27

*Roskin-Frazee v. Columbia Univ.*, 2018 WL 6523721 (S.D.N.Y. Feb. 21, 2018) ......................25

*Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230 (4th Cir. 2021)........................................18

*Swanger v. Warrior Run Sch. Dist.*, 346 F.Supp.3d 689 (M.D. Pa. 2018) ............................24, 25

*Verdu v. Trs. of Princeton Univ.*, No. 19-12484 (FLW), 2020 WL 1502849 (D.N.J. Mar. 30, 2020)............................................................................................17

*Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81 (3d Cir. 1987)..................................................8

**FEDERAL STATUTES**

20 U.S.C. §1681 *et seq.*............................................................................................27

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ..........................................................................................7, 12

34 CFR 106.45(b) ................................................................................................27

## INTRODUCTION

Plaintiff, a student at Franklin & Marshall College (the "College"), was on a baseball trip in March 2022 when he was arrested for sexual battery of a juvenile. The assault was reported by a sixteen-year-old girl, Jane Roe, who claimed Plaintiff penetrated her—both digitally and with his penis—without her consent. During the course of interviews with police and a recorded control call, Plaintiff admitted to having a sexual encounter with Jane Roe despite knowing she was uncomfortable and that she did not provide consent. Plaintiff was arrested on that basis.

After the College became aware of criminal proceedings against Plaintiff, it requested a copy of the law enforcement records. The College invited Plaintiff to participate in its resulting administrative process to determine whether Plaintiff violated the College's student code of conduct; Plaintiff declined to participate. The College's subsequent fact gathering revealed that Plaintiff had made statements to his teammates about his sexual encounter with Roe, including that she did not want to have sex, but that he "slipped it in" anyway. In light of the lack of any contrary evidence from Plaintiff, and Plaintiff's multiple admissions, the College found Plaintiff in violation of College policy. Plaintiff was suspended for two years with an anticipated return date of Fall 2024.

In late Spring 2022, in the midst of Plaintiff's sexual misconduct proceeding, Plaintiff reported receiving several inappropriate emails from the personal email address of one of his professors. The College responded to Plaintiff's report immediately, removing Plaintiff from the professor's course and assigning him a different instructor, inquiring about the professor's conduct, and removing the professor from contact with any other students following the conclusion of the semester. Given the professor's status as a faculty member, the College addressed the professor's misconduct through a separate process, resulting in the professor being suspended from teaching and ultimately terminated by the College.

Plaintiff asserts four bases for liability in his lawsuit. First, he asserts that the College treated him differently because he is a man, in violation of Title IX. Second, Plaintiff asserts that in disciplining him, the College failed to follow its written procedures. Third, he asserts that the College was deliberately indifferent to sex-based discrimination of him by a College professor, also in violation of Title IX. And Fourth, Plaintiff asserts that the College breached a contact with him when it disciplined his professor under faculty procedures rather than the Title IX policy.

With respect to the first two theories, the sole questions before the Court are whether when the College disciplined Doe, "it discriminated against him based on his gender in violation of Title IX, or otherwise violated a provision of state law." *Doe v. St. Joseph's Univ.*, Civ. No. 18-2044, 2019 WL 13246870, at 6 (citing *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 461 (S.D.N.Y. 2015)) (alterations omitted). Discovery has unearthed no facts that support Plaintiff's allegations of sex discrimination or process-related issues. It is of course not enough for Plaintiff to "rest on superficial assertions of discrimination"; he must establish that "particular circumstances suggest that bias was a motivating factor" of the College's finding of responsibility. *Doe v. Trs. of Boston College*, 892 F.3d 91 (1st Cir. 2018) (citation omitted); *see also Haidak v. Univ. of Mass. at Amherst*, 299 F. Supp. 3d. 242, 269 (D. Mass. 2018) (stating a plaintiff must produce "evidence in the form of a statement or anything else that suggested that gender-based bias played any part in the disciplinary process."). Because Plaintiff has failed to adduce any facts that support a reasonable inference that such circumstances exist, and because Plaintiff cannot establish a causal link between alleged discrimination and the outcome of his proceeding, summary judgment on his Title IX claim is warranted. Likewise, because discovery has unearthed no facts that support the conclusion that the College deviated materially from its written processes, Plaintiff's contract claim is also ripe for summary judgment.

2

With respect to the third and fourth theories – that the College was deliberately indifferent to harassment of Plaintiff or didn't deal with his report correctly – the facts show something very different from Plaintiff's allegations. The facts show that *immediately* upon Plaintiff's report of alleged misconduct by his professor, the College leapt into action. It removed Plaintiff from the professor's course in a matter of days and arranged for another instructor to finish teaching Plaintiff. The College also provided means for Plaintiff to avoid all contact with the professor, and the only subsequent contact between the professor and Plaintiff occurred because Plaintiff refused the College's suggestion that he block the professor's personal email. The College brought the professor up on conduct charges, which, after following the process required by the College's Faculty Handbook, resulted in the separation of the faculty member from the College. The College's response far outstripped the legal requirement that the College act without "deliberate indifference." Accordingly, summary judgment is appropriate on those claims as well.

Because none of Plaintiff's claims survive summary judgment, this action should be dismissed with prejudice.

## RELEVANT PROCEDURAL HISTORY

Plaintiff filed his original complaint on March 10, 2023, which the College moved to dismiss on May 26, 2023. Following the College's filing, Plaintiff filed an Amended Complaint on May 30, 2023. The College moved to dismiss Plaintiff's Amended Complaint on June 13, 2023, and the Court granted the College's Motion to Dismiss in part, dismissing Plaintiff's Title IX claims with prejudice and permitting the breach of contract claim to move forward. Plaintiff filed a Motion for Reconsideration of the Court's dismissal of Plaintiff's Title IX claims on September 20, 2023, which the College opposed. The Court granted Plaintiff's Motion for Reconsideration in part and granted Plaintiff leave to amend his Title IX claim. Plaintiff filed a second amended complaint on October 31, 2023 (hereinafter "SAC"); the College moved to dismiss the SAC on

November 14, 2023. The Court denied the College's motion on January 26, 2024. The College answered the SAC in full on February 9, 2024. The College now moves for summary judgment in the College's favor on all claims.

## SUMMARY OF STATEMENT OF UNDISPUTED FACTS

Plaintiff John Doe matriculated to the College in 2019 and was a member of the Baseball team. Statement of Undisputed Material Facts ("SOF") ¶¶ 1-2. In March 2022, the Baseball team attended a tournament in Winter Haven, Florida; Plaintiff attended the tournament. *Id.* ¶ 3-4. After one of their baseball games, on March 14, Plaintiff and some teammates went to a restaurant to eat; Plaintiff met Jane Roe at that restaurant. *Id.* ¶ 6-7. That evening, Plaintiff had a sexual encounter with Jane Roe. *Id.* ¶ 8.

Roe reported the encounter to the authorities the next day, alleging "she was vaginally raped by a 20 year-old baseball player," (being Plaintiff). *Id.* ¶¶ 9-10. On March 16, 2022, the Winter Haven Police Department facilitated a controlled call between Roe and Plaintiff during which "[Plaintiff] admitted to the following: [h]e confirmed he digitally penetrated her vagina while in her company, more than once (elevator, ride home, etc.); [h]e confirmed his penis did have union with [Roe's] vagina; [h]e confirmed he knew she was sixteen (16) years-old; [h]e stated [Roe] never said "No" to having sex with him, but he did confirm she told him repeatedly she was 'uncomfortable.'" *Id.* ¶ 13. Plaintiff was arrested following his interview, on March 18, 2022 and charged with Sexual Battery of a minor, and the police department issued a report. *Id.* ¶ 16-17; *see generally id.* ¶¶ 9-16.

The College initiated its disciplinary process shortly after Plaintiff returned to his home in New York. *See id.* ¶ 18-19. On March 21, Dean Colette Shaw emailed Plaintiff to schedule time to discuss the incident and the College's process, and provide Plaintiff support and resources. *Id.*

4

¶ 19. During the process and through the end of the semester, Plaintiff completed his coursework remotely. *Id.* ¶¶ 22, 76.

Dean Shaw engaged in a fact-gathering exercise concerning the allegations against Plaintiff. She requested the police report from the police department, which she received on March 31. *Id.* ¶ 30. The report was redacted and did not include Jane Roe's identity. *Id.* ¶¶ 31-32. Dean Shaw also spoke to two of Plaintiff's teammates, both of whom were on the trip and talked to Plaintiff about his sexual encounter with Roe. *Id.* ¶¶ 23-24; 28-29. They told Dean Shaw Plaintiff said he and Roe had sex three times, and that he "slipped" his penis into Roe's vagina. *Id.* ¶¶ 24, 29. Dean Shaw maintained contact with Plaintiff, informed him about the fact-gathering, and recommended he write down everything he remembers about his encounter with Jane Roe. *Id.* ¶¶ 26, 27. News of Plaintiff's arrest also began to spread throughout campus and the community. *Id.* ¶ 25.

On April 8, 2022, Dean Shaw emailed Plaintiff asking whether he wanted to participate in the College's information gathering process; Plaintiff said no. *Id.* ¶ 34. Two weeks later, on April 22, Dean Shaw and Dean Jedrek Dineros sent Plaintiff a letter informing Plaintiff that the College would be initiating an Administrative Review of the alleged misconduct ("April 22 Letter"). *Id.* ¶ 35. The April 22 Letter identified the Student Code of Conduct ("SCC") (which incorporates the College's non-Title IX sexual misconduct policy, the Community Standards Sexual Misconduct, ("CSSM")), as the policy applicable to Plaintiff's alleged misconduct. *Id.* ¶ 39.

On April 24, 2022, Plaintiff's attorney, Peter Heller, responded to the April 22 Letter. *Id.* ¶ 41. Mr. Heller stated that he instructed Plaintiff not to participate in the College's investigation until the final disposition of his underlying criminal proceeding. *Id.* Mr. Heller did not provide any indication of how long he expected the criminal proceeding to last. *Id.* The College continued with

its process, inviting Plaintiff on April 26 to participate in the administrative review meeting. *Id.* ¶¶ 42-43. On April 28, 2022, Mr. Heller requested the College stay its investigation in light of Plaintiff's ongoing criminal matter. Again, Mr. Heller did not provide any indication of how long he expected the criminal proceeding to last. *Id.* ¶ 44. The College, in accordance with the SCC, proceeded with its investigation. *Id.* ¶ 46. When confirming the timing for the Administrative Review meeting, Dean Shaw provided Plaintiff another opportunity to submit a statement or evidence for the review panel's consideration; Plaintiff did not submit anything. *Id.* ¶¶ 47-48.

The Administrative Review meeting was held on May 3, 2022. *Id.* ¶ 49. Plaintiff did not attend the in-person Administrative Review meeting. *Id.* ¶ 50. Based on the evidence in the College's possession, Deans Shaw and Dineros found Plaintiff responsible for misconduct. *Id.* ¶¶ 51-55. In a letter dated May 6, 2022, Plaintiff was informed of the outcome of the Administrative Review meeting, which found him responsible of the policies outlined in the April 22 Letter. *Id.* ¶ 51. On May 10, 2022, the Polk County State Attorneys' Office issued a "No Bill" for Plaintiff's sexual battery charge. *Id.* ¶ 56. On May 13, 2022, Plaintiff submitted an appeal of the finding of responsibility, attaching the No Bill as new evidence for consideration. *Id.* ¶ 57. On May 26, 2022, Margaret Hazlett, the Appeal Officer, affirmed the College's decision as to Plaintiff's finding of responsibility. *Id.* ¶ 60. Plaintiff was suspended for two years, running from May 2022 to May 2024, with an anticipated return date of Fall 2024. *Id.* ¶ 61.

During Spring 2022, Plaintiff was enrolled in BOS 480 taught by Dr. Eunbi Kim. *Id.* ¶ 69. Between March 21, 2022, and April 12, 2022, Dr. Kim sent Plaintiff several inappropriate emails through her personal, non-College affiliated account. *Id.* ¶ 71. Plaintiff's father notified the College through Dean Shaw on April 2, 2022, and the matter was referred to Associate Dean of Faculty, Dr. Amelia Rauser. *Id.* ¶¶ 72-73. Plaintiff forwarded copies of Dr. Kim's emails to Dean Rauser

on April 4, 2022. *Id.* ¶ 74. Dr. Rauser suggested to Plaintiff that he block Dr. Kim's personal email address since the College had control only over her professional email. *Id.* ¶ 77. Plaintiff did not block Dr. Kim's email address. *Id.* ¶ 79.

On April 6, 2022, Dr. Snider (now Buchkoski), the College's Title IX Coordinator, requested a meeting with Plaintiff regarding the emails he received from Dr. Kim. *Id.* ¶ 80. Plaintiff wrote by email that he did not want to meet with Dr. Snider. *Id.* ¶ 81. On April 7, 2022, Dr. Snider sent questions via email to Plaintiff about his correspondence with Dr. Kim; Plaintiff answered the questions. *Id.* ¶ 82. Plaintiff did not file a formal complaint with the College based on Dr. Kim's conduct. *Id.* ¶ 85.

The College addressed Dr. Kim's conduct concerning Plaintiff through a professional disciplinary process. Between April 28, 2022 and the date of her termination, Dr. Kim had no teaching responsibilities. *Id.* ¶ 86. Dr. Kim went on medical leave starting August 15, 2022. *Id.* ¶ 87. On November 10, 2022, Dr. Kim was notified that she was being placed on administrative leave throughout the pendency of her disciplinary proceedings. *Id.* ¶ 89. Dr. Kim was relieved of her teaching duties indefinitely, denied access to campus, and instructed not to communicate with College faculty. *Id.* As of March 10, 2023, Dr. Kim's employment with the College was terminated effective June 30, 2024. *Id.* ¶ 95.

## **LEGAL STANDARD**

Summary judgment is warranted "if there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *St. Joseph's Univ.*, Civ. No. 18-2044, 2019 WL 13246870, at 5 (E.D. Pa. Apr. 23, 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). An issue is material "only if it could affect the result of the suit under governing law." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the court then determines that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *See* Celotex, 477 U.S. at 322;

*Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987). Summary judgment is appropriate where the moving party shows that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. Where a moving party identifies an absence of necessary evidence, the non-moving party "must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## ARGUMENT

Plaintiff advances two sets of arguments in this action—one set related to the College's discipline of him and another set related to inappropriate conduct by his professor. Plaintiff asserts distinct claims under Title IX and breach of contract as to each set of arguments. Plaintiff contends that the College: (i) discriminated against him on the basis of sex when it disciplined him for his conduct, which he asserts violated Title IX, and (ii) did not follow its written procedures when it disciplined him, which he asserts was a breach of contract. With respect to his professor, Plaintiff alleges that (i) the College discriminated against him on the basis of sex by being deliberately indifferent in response to his report about Dr. Kim's emails, and (ii) the College's response to his report constitutes a breach of contract. The College is entitled to judgment on all of these theories.

I.     **Plaintiff's Title IX sex discrimination claim fails as a matter of law because there are no facts that support a reasonable conclusion that the outcome of <u>Plaintiff's proceeding was influenced by Plaintiff's sex.</u>**

To prove a Title IX claim, Plaintiff must show that he was discriminated against "on the basis of sex." *Doe v. Univ. of Sciences*, 961 F.3d 203, 209 (3d Cir. 2020) (hereinafter, "*USciences*"). Plaintiff argues the College discriminated against him *based on sex* by: (1) employing a flawed process; (2) being infiltrated by institutional bias against males, which adversely impacted the College's finding of responsibility against Plaintiff; (3) sanctioning

Plaintiff, but not another female student who allegedly also violated F&M policy;[1] and (4) adjudicating Roe's allegations against Plaintiff, but not Plaintiff's report against his professor. *See generally* SAC.

As demonstrated below, none of these allegations are based in fact. However, beyond that fundamental deficiency, none support Plaintiff's Title IX claim because none relate to Plaintiff's gender as a reason for his discipline in this case. *See* Order granting Def.'s Mot. for Summ. J., 2023 WL 2239475 CIVIL ACTION NO. 1:23-CV-00114, at *1-2 (M.D.N.C Sept. 6, 2023) (hereinafter "Wake Forest Order"). Consider *Doe v. Wake Forest University*, in which the Doe plaintiff alleged, in similar fashion to this case, that he was wrongfully accused of engaging in nonconsensual sexual activity, and was found responsible for assault under the University's policies. *See id.* at *4-7. Like here, Doe in *Wake Forest* complained of what he believed to be an unfair process, but could not link those allegations to sex at summary judgment, so judgment was entered against him. *See* Wake Forest Order at *1-2 ("Plaintiff has failed to offer evidence from which a jury could reasonably find that gender discrimination was a "but-for" cause of his suspension or that the University breached an enforceable objective procedural promise with respect to its disciplinary process… although the wisdom of Wake Forest's decision to suspend Doe may be in doubt, the lack of evidence in support of his legal claims is not."). So too here. Because Plaintiff has failed to put forth a single fact that links the foregoing allegations to his sex, even if his allegations about unrelated issues at the College were true, which they aren't, they would not be sufficient to defeat summary judgment.

Plaintiff's Title IX argument boils down to the following. According to Plaintiff, the College's sex bias is purportedly "evidenced" by:

---

[1] Plaintiff developed no facts related to this allegation in discovery, and appears to have abandoned it as a basis for his claim.

- The investigation, which slanted in favor of the Roe due to the College's reliance on the police report;
- The College's decision not to stay the proceedings until the conclusion of Plaintiff's criminal investigation, and relatedly, the adverse conclusions drawn against Plaintiff in light of his absence from the process;
- The Decision Letter not being supported by a preponderance of the evidence;
- The College's failure to adequately and genuinely consider Plaintiff's appeal, and wrongful refusal to consider the No Bill as new evidence;
- The College's trauma-informed approach to resolving sexual misconduct matters;
- College employees showing support for victims of sexual assault; and
- The College's response to pressure from the student body and Department of Education to reprimand perpetrators of sexual misconduct.

*See generally* SAC. Not only does Plaintiff lack evidence to support his arguments, but none of these arguments, standing alone or together, show discrimination on the basis of sex.

> ### a.   The College's adjudication process, both as applied to Plaintiff and generally, does not demonstrate sex bias.

Plaintiff's complaint here is straightforward: the adjudication process did not work in my favor, so it must have been unfair. But Plaintiff has established no facts that link any aspect of the College's process, either in relation to him or generally, to any influence on the basis of sex.

Plaintiff's perceived unfairness is based, in part, on the College's decision to consider a police report in which Plaintiff admitted to misconduct. The Winter Haven Police Report stated:

**22-1479**    Supplement No **0002**

**WINTER HAVEN POLICE DEPARTMENT**

**Narrative**

allegations and details only known to the two. During the recorded controlled phone call conversation, John Doe admitted to the following:
- He confirmed he was with ██████ on the date/time of the incident at the parking garage.
- He confirmed he digitally penetrated her vagina while in her company, more than once (elevator, ride home, etc.).
- He confirmed he undressed ██████ as they were in the back seat of her vehicle, while parked at the parking garage.
- He confirmed his penis did have union with ██████ vagina.
- He confirmed he knew she was sixteen (16) years old.
- He stated ██████ never said "No" to having sex with him, but he did confirm she told him repeatedly she was "uncomfortable."

*See* Declaration of Colette Shaw ("Shaw Decl.") Ex. 8 at 14. The police report also stated:

Based on the above listed probable cause ▇Redacted▇ admitted that he digitally penetrated ████ vaginally and admitted the union of his penis against her vagina without ████ permission. ▇Redacted▇ was charged with sexual battery under

*Id.* at 10. And, it said:

> the victim was the youngest he had ever been with. The defendant advised that the victim did not want to have sex with the defendant. The defendant explained that conversation occurred in the beginning and was talked about again prior to engaging in sexual activity. The defendant admitted that the victim advised "I'm kinda

*Id.* at 7.

It is difficult to credit an argument that it was unreasonable for the College to commence an investigation in light of the admissions reflected in the Police Report of actions that took place on a school-sponsored trip. Plaintiff was encouraged to participate in the investigation and provide contrary evidence, both through the invitation letter, SOF ¶ 35, and through email, *id.* ¶ 34; he elected not to do so. *Id.* He likewise provided no explanation, no "exculpatory evidence," and no evidence to counterbalance his own admissions contained in an official government record provided to the College. SOF ¶¶ 34, 48.

Declining to participate in the College's process was of course Plaintiff's right, but in so doing he provided no evidence for the College to consider apart from the evidence the College had—which essentially included the Police Report and Plaintiff's incriminating statements to his teammates. As explained above, Plaintiff spoke freely to his teammates about having sex with Jane Roe despite her lack of consent, corroborating the police report. SOF ¶¶ 23-24; 28-29.

Because the Police Report and Plaintiff's admissions indicated that Roe did not consent to sexual intercourse, Plaintiff's actions implicated the CSSM, the non-Title IX sexual misconduct policy incorporated in the Student Code of Conduct. *See* Shaw Decl. Ex. 1. The CSSM explicitly states consent must be obtained with some *affirmative* action: "Silence or lack of resistance, in and of itself, does not constitute Consent. Consent can be given by words or actions, provided that those words or actions clearly communicate willingness to engage in the sexual activity." *Id.* at 18. In addition to Roe repeatedly stating she was uncomfortable, the police report is replete with Roe's statements about Plaintiff's conduct amidst her lack of consent. *See id.* at 4 (noting the

complainant explicitly "asked [Plaintiff] to stop [intercourse], but he didn't."); *see also id.* at 6 ("[Plaintiff] acknowledged that he knew [the complainant] was uncomfortable with the situation and proceeded to engage in sexual activity."). Plaintiff's attempt to poke holes in the College's reliance on the police report by challenging Roe's credibility are likewise problematic and self-serving, since he of course never provided any evidence to call her credibility into question. These challenges are precisely the types of issues Plaintiff could (and should) have raised during the resolution process, but chose not to. In sum, Plaintiff:

- refused to cooperate or participate in the College's process,
- expected the College to stay its investigation, contrary to its own policies,
- expected for the College not to rely on the evidence within its possession in which Plaintiff acknowledged wrongdoing,
- did not provide the College additional evidence or narrative, and then
- concluded the College's determination was erroneous for working within its limits.

"[C]onclusory allegations of gender bias based on the procedures of the disciplinary proceedings or decisions about the weight of the evidence are insufficient to defeat a motion for summary judgment under Rule 56." *St. Joseph's Univ.*, Civ. No. 18-2044, 2019 WL 13246870, at 12 (citing *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 926 (S.D. Iowa 2018)). And conclusory allegations are all Plaintiff has here.

This is not a case where the evidence "substantially favor[ed] the respondent's version of events, [and] the evaluators chose to accept [the complainant's] unsupported accusatory version instead." *Id.* (citing *Doe v. Colgate Univ.*, No. 15-1069, 2017 WL 4990629, at *11 (2d Cir. Jan. 15, 2019)). No, here Plaintiff admitted to a policy violation in the evidence that the College had, and the College found him responsible of misconduct. SOF ¶¶ 13, 15, 51; *see St. Joseph's Univ.*, Civ. No. 18-2044, 2019 WL 13246870, at 12 (highlighting Plaintiff took "full responsibility" for his actions therefor weakening his erroneous outcome argument). In the absence of any

explanatory evidence, Plaintiff's admissions were determinative and his sex had nothing to do with it. SOF ¶¶ 52-53. Plaintiff has presented no evidence to the contrary.

> **b.** **The College's decision to proceed with the resolution process absent Plaintiff's participation does not demonstrate sex bias.**

The College is not obligated, by law or policy, to stay a disciplinary process due to a concurrent criminal investigation. College policy plainly states it will "generally proceed [with its investigation] even during the time of a pending law enforcement investigation." SOF ¶ 45. Plaintiff's argument that the College's decision to not *depart* from its ordinary process in his case hardly demonstrates sex bias. Proceeding with a college disciplinary process during a related criminal investigation is likewise not a violation of the law. *See Gendia v. Drexel Univ.*, 2020 WL 5258315 (E.D. Pa. Sept. 2, 2020) ("nothing in the caselaw suggests that conducting an internal investigation in tandem with a criminal investigation is inherently discriminatory or otherwise illicit.").

The College of course has no authority or power concerning the duration of criminal investigations—which can take weeks, months, or years. It is not practical, safe, or feasible, as Plaintiff suggests, for the College to maintain a policy that requires it to stay its own investigation until the conclusion of a criminal investigation.[2] While "there may be circumstances when the College may need to temporarily delay its investigation while law enforcement gathers evidence," Plaintiff's request for preferential treatment against the College's standard protocol does not constitute the necessity referenced in the policy. SOF ¶¶ 41, 44; *see also* Shaw Decl. Ex. 1 at 28 ("An accused student who fails to attend the administrative review or Committee proceeding risks

---

[2] Plaintiff uses inverted logic to suggest the College rushed into the administrative process because Plaintiff's No Bill was issued—*by happenstance*—on May 10, 2022, a week after his administrative meeting. Plaintiff's argument relies, however, entirely on hindsight for its appeal; as far as any third party could know, his case could just as easily have gone to prosecution, in which case it might well still be awaiting trial or appeal. Proceeding in light of known facts at the time was neither unreasonable nor discriminatory.

a recommendation of the Administrative Officer based upon the information reviewed."). It is undisputed that no adverse inferences were drawn based on Plaintiff's absence from the investigation and adjudication process. Shaw Decl. ¶ 50; Declaration of Jedrek Dineros ("Dineros Decl.") ¶ 31.

### c. Plaintiff has presented no evidence that the Decision Letter was not supported by a preponderance of the evidence.

Plaintiff also asserts in conclusory fashion that the College did not apply a preponderance standard and did not thoroughly consider his appeal, but Plaintiff presents zero facts—other than the fact that the outcome was not in his favor—to support his assertions, which are belied by the plain language of the police report. SOF ¶¶ 13, 15.

### d. Plaintiff has developed no evidence that the College did not adequately consider his appeal.

Plaintiff also contends that the College did not "adequately and genuinely" consider his appeal, SAC ¶ 239, but there are no facts to support that contention. Plaintiff did not depose any of the College officials involved in considering his appeal. Plaintiff's criticism of the appeal process appears to be that it affirmed the College's initial decision in light of the No Bill. *Id.*; *see* SOF ¶ 60. As College Policy unequivocally states, the appeal officer exercises discretion regarding whether new evidence has any impact on the finding. Shaw Decl. Ex. 1 at 36. ("A review may follow from a finding that new evidence not available at the original disposition exists but only upon remand for additional consideration by the Committee on Student Conduct or administrative review…The decision of whether there are grounds for appeal is at the sole discretion of the appeal officer."). The appeal officer was not obligated to reverse the College's determination due to the presence of a No Bill, particularly where, as here, the No Bill wasn't really "new evidence" of what did or did not happen between Plaintiff and the complainant, just of whether the district attorney was inclined to prosecute.

> **e.     Plaintiff has not shown the College uses a trauma-informed approach or that such an approach is a Title IX violation.**

In his SAC, Plaintiff takes issue with the College's use of a trauma-informed approach to resolve sexual misconduct complaints, but he does not explain how that approach had any impact on the outcome of his case. *See* SAC ¶ 240. For this reason this criticism is little more than a distraction. Plaintiff likewise adduced no facts in discovery that the College *actually uses* a trauma-informed approach.  In any event, Plaintiff further fails to provide an explanation as to "why a trauma-informed investigation with a victim-centered approach demonstrates a bias against male students, given that men, like women, can be victims of sexual assault." *Messeri v. Univ. of Colo.*, No. 18-cv-2658-WJM-SKC, 2019 WL 4597875, at *15 (D. Colo. Sept. 23, 2019); *see St. Joseph's Univ.*, Civ. No. 18-2044, 2019 WL 13246870, at 8 ("[S]upport for sexual assault victims and awareness [does not] demonstrate gender bias against men."); *see also Bleiler v. Coll. of the Holy Cross*, No. 11-11541, 2013 WL 4714340, at *12 (D. Mass. Aug. 26, 2013) ("[B]ias toward the rights of reporting complainants is not the same as bias or discrimination against male students.") (alterations omitted). Plaintiff adduced no facts in discovery that would show how this allegation relates to the outcome of his case, and it does not stand in the way of summary judgment.

> **f.     College employees supporting female empowerment does not demonstrate institutional bias**

Plaintiff alleged in his SAC that three female employees, in their purported avid support for women and survivors of sexual assault, demonstrate anti-male bias. Again, though, he does not connect those allegations in any way to the outcome of his disciplinary proceeding. Courts have repeatedly held that the involvement of female employees, faculty members, and administrators in female empowerment activities does not create an inference of anti-male bias. *See, e.g.*, *Norris v. Univ. of Colorado, Boulder*, 362 F. Supp. 3d 1001, 1013 (D. Colo. 2019) ("the fact that the university's Title IX coordinator has experience working with survivors of domestic violence does

not establish that she harbors pro-female biases") (quotations and citations omitted); *see also Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 189 n.6 (D.R.I. 2016) (stating the "allegation that [a] decision-maker had worked for a women's resource center in the past was plainly insufficient to infer gender bias") (quotation and citation omitted); *see also Doe v. Miami Univ.*, 882 F.3d 579, 601 (6th Cir. 2018) ("merely being a feminist or researching topics that affect women does not support a reasonable inference that a person is biased."). Plaintiff's unspoken assumption, which it urges this Court to adopt, is that support for women equates to animus for men. This position, ironically, adopts the very stereotypes that Plaintiff contends he was a victim of. The Court should treat these assumptions masquerading as allegations as they deserve and disregard them.

> **g.   Plaintiff has developed no facts establishing that the College experienced external pressure that impacted the outcome of Plaintiff's case.**

Plaintiff argues without support that the College succumbed to external pressure—from the Department of Education and within the F&M community—which led to the College to discipline Plaintiff. *See* SAC ¶¶ 36, 74. *First*, Plaintiff developed no facts in this regard in discovery, and appears to have abandoned this theory. In any case, however, "[p]ressure to comply with Title IX does not equate with a *failure* to comply with Title IX. *Doe v. Trs. of Princeton Univ.*, 2020 WL 7397804 (D.N.J. Feb. 28, 2020) (emphasis added). And "[p]ressure from the federal government to investigate sexual assault allegations more aggressively ... says nothing about [gender bias]." *St. Joseph's Univ.*, Civ. No. 18-2044, 2019 WL 13246870, at 8; *Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064, 1078 (D. Colo. May 26, 2017). While members of the F&M community were largely aware of Plaintiff's arrest, see, *e.g.*, SOF ¶ 33, the only evidence in the record related to the impact of that knowledge is that it had no impact on the College's decision. *See* Shaw Decl. ¶¶ 48-49; *see* Dineros Decl. ¶¶ 29-30.

But even if Plaintiff could show the College was pressured to rule one way or another in sexual misconduct cases, "external pressure alone is not enough"—it must be "combined with other circumstantial evidence of bias in [the plaintiff's] specific proceeding [that] gives rise to a plausible [Title IX] claim." *Id.* (alterations in original). *Verdu v. Trs. of Princeton Univ.*, No. 19-12484 (FLW), 2020 WL 1502849, at \*5 (D.N.J. Mar. 30, 2020). That is not the case here.

In sum, Plaintiff has "offered nothing more than an administrative decision by school officials [with] which he disagreed, and unelaborated allegations that the decision must have been due to gender bias, essentially because he is male, the complainant is female, and the decision was adverse to him." *Doe v. Rider Univ.*, No. 3:16–cv–4882–BRM–DEA, 2018 WL 466225, at 9 (D.N.J. Jan. 17, 2018) (citation omitted). His claim cannot survive summary judgment on that basis.

### h.   Plaintiff fails to identify appropriate comparator evidence.

Plaintiff also argues that the College's decision not to formally investigate his report against Dr. Kim is an example of sex discrimination and that the College's treatment of a female student who was arrested for protesting police brutality is also evidence of sex discrimination. Plaintiff did not develop these allegations in discovery at all. But in any case, no part of these allegations demonstrate sex bias.

To show bias by comparison, Plaintiff must show that a *similarly situated* female in *similar circumstances* was treated more favorably and that the inconsistent treatment was because of sex. *St. Joseph's Univ.*, Civ. No. 18-2044, 2019 WL 13246870, at 6 (referring to *Doe v. Trs. of Univ. of Pa.*, 270 F. Supp. 3d 799, 824 (E.D. Pa. 2017)). As to Dr. Kim, Plaintiff's argument fails on both fronts: Plaintiff and Dr. Kim are not similarly situated (she is a professor, he is a student) and the conduct was starkly different (sexual assault versus inappropriate emails). *See Verdu v. Trs. of*

*Princeton Univ.*, No. 19-12484 (FLW), 2020 WL 1502849, at *6 (D.N.J. Mar. 30, 2020) (stating "a student is not a counterpart" to a professor).

As to the female student, Plaintiff's claim fails because their conduct was distinctly different. *See, e.g.*, *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 236 (4th Cir. 2021) (holding two students—one male and one female—accused of larceny and assault were not similarly situated because larceny and assault are "temporally and elementally distinct.").

Importantly, Plaintiff has not showed the College's treatment of either Dr. Kim or the female student was influenced by sex. The College did not initiate a formal investigation of Plaintiff's report of Dr. Kim under its Title IX policy because Plaintiff did not file a formal complaint and it pursued discipline of Dr. Kim through the faculty disciplinary process. Plaintiff likewise can present no information following discovery that would suggest the female student he identified in his complaint is similarly situated.

## II.     The College's processes used to adjudicate Roe's complaint did not <u>constitute a breach of contract</u>.

To prove a breach of contract claim, "a plaintiff must show: (1) the existence of a contract; (2) breach of duty under that contract; and (3) resulting damages." *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 655 (E.D. Pa. 2012) (citing *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006)). Under Pennsylvania law, relationships between private universities and their enrolled students are contractual in nature. *Kimberg v. Univ. of Scranton*, No. 06-cv-1209, 2007 WL 405971, at *3 (M.D. Pa. Feb. 2, 2007) (citing *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999)). The terms of such contracts are comprised of the "written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Id.*

Plaintiff purports to base his breach-of-contract claim on the College's non-Title IX policy, Community Standards Sexual Misconduct policy ("CSSM"), and the Student Code of Conduct ("SCC"). Plaintiff argues the College breached the CSSM by adjudicating the complainant's allegations against Plaintiff despite the complainant being a nonstudent, and failing to provide Plaintiff an opportunity to review the evidence gathered as part of the investigation and the investigation report. Plaintiff also argues the College breached the SCC by purportedly failing to conduct a fair and impartial investigation (including denying Plaintiff a meaningful opportunity to be heard), and by finding Plaintiff in violation of the SCC.

First, a clarification: the CSSM and the SCC are not separate policies. The SCC incorporates multiple College policies, including the CSSM. *See* Shaw Decl. Ex. 1. Both of Plaintiff's arguments fail. *First*, the scope of the CSSM includes conduct that has an impact on F&M's campus—which Plaintiff's conduct did, making the College's adjudication of Roe's allegations proper. *Second*, the process the College used to address Roe's allegations does not include the steps Plaintiff contends the College omitted, so his claim that a contract was breached when he was not able to review evidence or an investigation report are not grounded in any applicable contractual language. *Finally*, any claim that the College breached the SCC by failing to conduct a "fair and impartial hearing" fails on its face because that language is not in the SCC.

### a.   The College did not breach the SCC because it had jurisdiction to adjudicate Jane Roe's claim against Plaintiff.

The SCC, which incorporates the CSSM, states:

> **A student who is found to have engaged in the following conduct**, or is found to have aided or assisted any other person in committing any of the following acts, ***while on or off the College campus*** shall be subject to action as stated in the Student Code… Prohibited acts include, but are not limited to: Sexual Misconduct (Community Standards) . . .

19

Shaw Decl. Ex. 1 at 3-4. As a result, Roe being a nonstudent is immaterial. Plaintiff, at the time of

the incident, was a student who was "found to have engaged"—and in fact admitted to—

misconduct (while off campus) that falls squarely within the definition for Sexual Misconduct

under the CSSM, rightfully prompting the College to take action to address the conduct.

Plaintiff also argues that the College did not have jurisdiction over his actions since

"Plaintiff's actions had no impact on [Roe's] ability to participate in F&M's programs." SAC

¶ 211. However, Plaintiff's argument lacks any contractual hook. The CSSM applies to:

> behavior by an individual or a student organization that does not
> constitute Title IX Sexual Harassment, but has adverse effects on,
> or creates a hostile environment for, individuals participating or
> attempting to participate in Franklin & Marshall's education
> program or activity, ***or otherwise has a reasonable connection to
> F&M***.

Shaw Decl. Ex. 1 at 16 (emphasis added). The "or" is conjunctive here, and again, Roe being a

nonstudent has no bearing on the College's authority to address Plaintiff's conduct. Not only was

the impact of Plaintiff's conduct made clear through student letters to administration, see Shaw

Decl. ¶ 10, and postings on the protest tree, *see id.* 13, Plaintiff's conduct occurred while on a

school-sponsored trip and appeared in multiple publications, local and national, immediately

connecting Plaintiff's conduct with the College and creating a strong connection to life on the

College's campus. SOF ¶ 25.

   **b.**  **The Administrative Review Process does not involve the creation of an investigation report or an opportunity to review the evidence.**

The College employs different processes under the SCC to resolve reports of misconduct,

including an Administrative Review process. *See* Shaw Decl. Ex. 1 at 27-28. The College reviewed

Roe's allegations against Plaintiff using that process. *Id.* ¶ 35. The Administrative Review process

provides that:

- The student will receive a request in written form, by email, or by telephone to meet or have an appointment scheduled to meet with an Administrative Officer.

- At the meeting with the Administrative Officer, the student will be informed of the reason for the meeting.

- Others present may include a support person, witnesses, representatives from the Committee on Student Conduct and liaisons with specific knowledge important to the case.

- The student will be asked for his or her account of the incident(s).

- The student may request to review the Incident Report, if applicable.

- If a violation of the Student Code has occurred, the Administrative Officer will discuss with the student the impact of their behavior and any necessary follow-up.

- Students are not presumed to be in violation of the Student Code; however, Administrative Officers are empowered to make decisions whether or not a violation of the Student Code has occurred.

- At the conclusion of the meeting, if a decision has been reached by the Administrative Officer, the student will be informed of that decision and the sanction, if any. The student will also receive written verification of that decision in a timely fashion. If the Administrative Officer is not able to arrive at a decision at the conclusion of the meeting, the student will be informed of the outcome in written form in a timely fashion. A copy of this letter will be placed in the Student File.

Shaw Decl., Ex. 1 at 27. The Administrative Review process does not involve a verbatim transcript or recording of the review meeting, an opportunity to review evidence, or an investigation report. The procedures require that the student will be informed, in writing, of the reason for the meeting, which Plaintiff was. SOF ¶¶ 35-40.

Plaintiff's theory has another significant hole, though. Even if an Administrative Review included a review of the evidence and an investigation report (which it does not), Plaintiff's argument fails at causation: Plaintiff's decision to not participate in the underlying process waived his rights to later complain he did not receive process he rejected. In other words, once Plaintiff opted not to participate in the College's process, he waived his rights to assert that the College should have provided him with the options he refused. It is well-settled law that "waiver may be

established by conduct inconsistent with claiming the waived right or any action or failure to act evincing an intent not to claim the right." *CONRAIL v. Foster Wheeler Envtl. Corp.*, 2000 WL 1367943, at 16 (E.D. Pa. Sept. 20, 2000) (citing *Evcco Leasing Corp. v. Ace Trucking Co.*, 828 F.2d 188, 195 (3d Cir. 1987)) (emphasis added). "Once a party has waived a legal right, it cannot undo that waiver and recapture that right." *Mikail v. PAM Mgmt.*, 2017 WL 1344676, at 13 (M.D. Pa. Apr. 12, 2017). Plaintiff explicitly opted not to participate in the College's process. *See* SOF (stating Plaintiff did not participate in the College's investigation); *see also* SOF ¶ 50 (stating Plaintiff did not participate in the hearing despite receiving notice thereof). Now, Plaintiff attempts to vindicate rights provided through a process from which Plaintiff was intentionally absent. Such behavior is the precise purpose of law concerning waiver through conduct, and any argument to the contrary should be rejected.

### c.   The College did not breach the SCC because Plaintiff engaged in conduct that violated the law.

The SCC is designed to create a safe environment for all members of the College community, which includes sanctioning conduct that violates the law. As such, the College found Plaintiff responsible of violating the SCC based on engagement in conduct in "[v]iolation of federal, state, or local statutes, codes, or regulations." *See* Shaw Decl. Ex. 1 at 5. Plaintiff argues the College wrongly held him in violation of the SCC because, according to Plaintiff, the No Bill (issued by the Florida state attorneys' office) proves he did not violate a law. But actual innocence does not follow from a No Bill. Rather, a No Bill indicates insufficient evidence to indict. Plaintiff's admission that he engaged in conduct that violated the law, and refusal to provide any explanation to the College, is determinative. Indeed, the SCC states:

> Students are responsible for their actions and any consequences imposed by authorities outside the College. When student behavior is potentially in violation of law or of the Code, the College reserves

> the right to invoke the conduct process independent of, or in addition
> to, any pending criminal charges or civil claims, or convictions.

*Id.* at 2.

The policy does not require a student be indicted or convicted to be in violation of the SCC, but rather engage in conduct the College determines occurred, and which also violates the law. Stated otherwise, Plaintiff admitted to engaging in sexual activity without consent, and the issuance of a No Bill does not negate that the College reasonably concluded under the circumstances that such misconduct occurred. The College therefore properly considered whether Plaintiff was in violation of the SCC.

Plaintiff also argues he should not have been held responsible under the SCC because his conduct does not constitute statutory rape under Florida state law. That argument, however, completely misses the point. Whether the complainant was of age under Florida law does not change the fact that she did not consent to the complained-of sexual conduct and that Plaintiff admitted to the misconduct. The College found by a preponderance of the evidence that the misconduct, itself, occurred—that is sufficient to hold Plaintiff responsible under this provision of the SCC.

### III. Plaintiff's Title IX Claim regarding the College's response to his report of harassment against Professor Kim fails because the College was not deliberately indifferent to any report of actionable harassment.

Plaintiff contends that the College's response to his report about Dr. Kim was deliberately indifferent to known sexual harassment in its programs and activities, but Plaintiff's argument fails principally because Plaintiff cannot show, as he must under the governing legal standards, that the College's response to Plaintiff's report was "clearly unreasonable." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Additionally, the alleged deliberate indifference "must subject

the student[] to further harassment," which Plaintiff was not. *Swanger v. Warrior Run Sch. Dist.*, 346 F.Supp.3d 689, 705 (M.D. Pa. 2018) (citing *Davis*, 526 U.S. at 644-645).

Courts have found a school's response to be not clearly unreasonable when it includes a "prompt inquiry into the matter." *Doe v. N. Penn Sch. Dist.*, No. 20-5142, 2022 U.S. Dist. LEXIS 190610, at *17 (E.D. Pa. Oct. 19, 2022); *see, e.g.*, *Swanger*, 346 F.Supp.3d at 710 (finding no deliberate indifference where the school separated the alleged harasser from the plaintiff the same day the school received the report). Such is the case here; the College responded almost immediately after Plaintiff reported Dr. Kim's conduct. Plaintiff—by way of his parents—reported Dr. Kim's conduct on Saturday, April 2. SOF ¶¶ 72-82. That Monday, April 4, Plaintiff was instructed to forward Dr. Kim's emails to Dean of Faculty, Dr. Rauser, which he did. Id. ¶ 74. By April 6, Dr. Rauser had arranged for Plaintiff to complete the course with a different instructor, and Plaintiff ultimately completed the course earning credit and an A. *Id.* ¶¶ 75-76; Declaration of Joshua W.B. Richards ("Richards Decl.") Ex. 3, Deposition of Plaintiff John Doe ("Pl. Dep.") at 114:17. Dr. Rauser also suggested that Plaintiff block Dr. Kim's email address, which Plaintiff declined to do.[3]

Plaintiff was also contacted by the Title IX Coordinator, Dr. Kate Buchkoski, on April 6. SOF ¶ 80. Dr. Buchkoski asked Plaintiff to meet and discuss Dr. Kim's conduct and options concerning the report; Plaintiff declined to meet with Dr. Buchkoski. *Id.* Plaintiff forwarded Dr. Kim's emails to Dr. Buchkoski and answered some questions, but was otherwise unresponsive. *Id.* At one point, Dr. Buchkoski asked Plaintiff's father to convince Plaintiff to engage in the process. Declaration of Kate Buchkoski ("Buchkoski Decl.") ¶ 18. Plaintiff's allegations of deliberate

---

[3] In his deposition, Plaintiff stated he did not block Dr. Kim's email address because he did not believe he was obligated to play any role in preventing harassment toward him. *See* Pl. Dep. 110:24-25.

indifference ring hollow in light of his abdication of any role in assisting the College in pursuing his report.

Relatedly, "schools are not required to engage in particular disciplinary action" against alleged perpetrators of sexual harassment; instead, they are required to respond in a manner that is not deliberately indifferent. *See* ECF No. 24 at 22 ("Mem. Op.") (quotations omitted); *see also See Roskin-Frazee v. Columbia Univ.*, 2018 WL 6523721, at 9 (S.D.N.Y. Feb. 21, 2018) ("There is ample authority holding that … [a school's] failure to provide the remedy wanted by the victim [does not] constitute[] deliberate indifference under Title IX.") (alterations omitted). That the College did not respond according to Plaintiff's (unexpressed) preference has no bearing on whether the College was deliberately indifferent.

Plaintiff's argument also fails as to causation because he cannot show the College's response exposed him to any further harassment by Dr. Kim. As this Court has already noted, Dr. Kim's single email to Plaintiff following his report—which Plaintiff argues is evidence of further harassment (SAC)—does not constitute harassment. Mem. Op. at 22. Plaintiff's impression that the College's response was somehow indifferent because the conduct continued does not comport with legal authority; "[t]he fact that the appropriate person's initial response does not remedy or prevent the harassment, or that the school does not use a particular method to remedy or prevent the harassment, does not provide sufficient grounds for liability" based on deliberate indifference. *Swanger*, 346 F.Supp.3d 689 at 705.

The College also responded by cutting off conduct between Dr. Kim and students at the conclusion of that semester. Dr. Kim went on medical leave starting August 15, 2022, and was assigned no teaching duties going forward. SOF ¶ 86. On September 30, 2022, then-Provost and Dean of Faculty, Cameron Wesson, sent a memorandum to the Professional Standards Committee

outlining inappropriate conduct displayed by Dr. Kim, including her interactions with Plaintiff.[4] *Id.* ¶ 87. On November 10, 2022, Dr. Kim was notified that she was being placed on administrative leave throughout the pendency of her disciplinary proceedings. *Id.* ¶ 88. Dr. Kim was relieved of her teaching duties, denied access to campus, and instructed not to communicate with College students, and College faculty apart from Dr. Rauser. *Id.*

On January 24, 2023, Dr. Kim was notified that the College was initiating formal proceedings for her dismissal. *Id.* ¶ 89. On February 22, 2023, the Chair of the Judicial Committee notified Dr. Kim the Judicial Committee would hold a hearing related to her dismissal. *Id.* ¶ 90. On March 7, 2022, the Judicial Committee invited Plaintiff to participate in Dr. Kim's hearing. *Id.* ¶ 91. Plaintiff did not respond to this outreach. Pl. Dep. at 123:9-24. On March 10, 2023, the College resolved all grievances against Dr. Kim outside of the judicial process. SOF ¶ 94. The terms of Dr. Kim's administrative leave remained in place (banned from campus, no contact with students, etc.) and Dr. Kim's employment with the College was terminated effective June 30, 2024. *Id.*

### IV. The College's response to Plaintiff's report concerning Dr. Kim does not constitute a breach of contract.

Plaintiff contends the College breached its Title IX Policy by failing to investigate his complaint against his professor and provide him supportive measures, but Plaintiff's argument ignores the plain language of the Title IX Policy. Plaintiff never filed a formal complaint, which is necessary to trigger a formal process under the Title IX Policy. Because Plaintiff has not alleged

---

[4] Contrary to Plaintiff's suggestion that the College scheduled a hearing regarding Dr. Kim's conduct only after being threatened with legal action, SAC ¶ 240, the College initiated disciplinary proceedings against Dr. Kim on September 30, 2022 SOF ¶ 87, before Plaintiff even sent his initial demand letter, see Buchkoski Decl. ¶ 10, let alone filed this lawsuit.

facts sufficient to establish the College breached any concrete term of the College's policies, his claim fails.

Federal law requires, and the Title IX Policy clearly states, that a formal complaint is necessary to initiate the formal grievance process. 34 CFR 106.45(b). A formal complaint is "[a] document submitted by a Complainant and bearing the Complainant's physical or digital signature, or otherwise indicating that the Complainant is the one filing the Formal Complaint, requesting that Franklin & Marshall investigate the allegations of Prohibited Conduct." Buchkoski Decl. Ex. 1 at 2. And despite his familiarity with the College's sexual misconduct procedures at the time he reported Dr. Kim's conduct Plaintiff did not file a formal complaint against Dr. Kim. Pl. Dep. 117:5-9. In other words, the College breached no duty to Plaintiff when it did not investigate a formal complaint that Plaintiff never made.

Plaintiff's breach of contract claim fails for another reason as well. Plaintiff has not shown he suffered any harm due to the College pursuing his reports of alleged misconduct under the faculty handbook instead of the Title IX Policy. In order to assert a viable breach-of-contract claim, Plaintiff must demonstrate he "suffered damages from the breach." *Powell v. St. Joseph's Univ.*, CIVIL ACTION NO. 17-4438, 2018 WL 994478, at *4 (E.D. Pa. Feb. 20, 2018). Plaintiff fails to do so here. Although Plaintiff attempts to make the College appear unresponsive to his reports because it did not conduct a formal investigation under the Title IX policy, Plaintiff can offer no ways in which an investigation under the Title IX policy would have changed the outcome in any material way, given that Dr. Kim was removed as his professor, he obtained an A in her class, she was removed from teaching the following semester, and ultimately separated from the College. Because Plaintiff has not demonstrated there would have been any difference had the College pursued his professor's conduct under the Title IX Policy, his breach of contract claim fails.

## <u>CONCLUSION</u>

Based on the foregoing, the College asks that the Court grant summary judgment in the College's favor.

<table>
<tr><td></td><td>/s/    *Joshua W.B. Richards*</td></tr>
<tr><td>Date: July 1, 2024</td><td>Joshua W.B. Richards (PA 204315)<br>Fanta Freeman (PA 327558)<br>Saul Ewing LLP<br>Centre Square West<br>1500 Market St., 38th Floor<br>Philadelphia, PA 19102<br>P: 215-972-7737//7764<br>joshua.richards@saul.com<br>fanta.freeman@saul.com</td></tr>
</table>

*Attorneys for Franklin & Marshall College*

## <u>CERTIFICATE OF SERVICE</u>

I, Joshua W.B. Richards, certify that on this date I filed via the ECF system a true and correct copy of the foregoing *Memorandum of Law in Support of Defendant Franklin & Marshall's Motion for Summary Judgment*, which constitutes valid service on the following registered users:

Kevin D. Rauch
Summers, McDonnell, Hudock, Guthrie & Skeel, LLP
945 East Park Dr., Ste. 201
Harrisburg, PA 17111
krauch@summersmcdonnell.com

Carrie J. McConnell
Summers, McDonnell, Hudock, Guthrie & Rauch, P.C.
945 East Park Dr., Ste. 201
Harrisburg, PA 17011
cmcconnell@summersmcdonnell.com
Stuart Bernstein
Nesenoff & Miltenberg, LLP
363 Seventh Ave., 5th Fl.
New York, NY 10001
sbernstein@nmllplaw.com

Andrew T. Miltenberg
Nesenoff & Miltenberg, LLP
363 Seventh Ave., 5th Fl.
New York, NY 10001
amiltenberg@nmllplaw.com

Kristen Mohr
Nesenoff & Miltenberg, LLP
363 Seventh Ave., 5th Fl.
New York, NY 10001
kmohr@nmllplaw.com

Date: July 1, 2024

/s/      *Joshua W.B. Richards*
Joshua W.B. Richards (PA 204315)
Fanta Freeman (PA 327558)
Saul Ewing LLP
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
P: 215-972-7737//7764
joshua.richards@saul.com
fanta.freeman@saul.com

*Attorneys for Franklin & Marshall College*