UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————

JOHN DOE,                                          :
                        Plaintiff,                 :
                                                   :
            v.                                     :        No. 5:23-cv-0943
                                                   :
FRANKLIN AND MARSHALL COLLEGE,                     :
                        Defendants.                :

———————————————————————

**O P I N I O N**
**Defendant's Motion for Summary Judgment, ECF No. 54 - Granted in part, Denied in part**

**Joseph F. Leeson, Jr.**                                      **August 26, 2024**
**United States District Judge**

## I.        INTRODUCTION

Plaintiff John Doe was an undergraduate student at Defendant Franklin and Marshall

College ("F&M" or "the College").  In March 2022, Plaintiff was arrested on criminal charges of

sexual battery.  Within two (2) months, the College initiated disciplinary action against Plaintiff

for violations of the College's Community Standards Sexual Misconduct Policy and Student

Code of Conduct, investigated the incident, held a disciplinary hearing, found him in violation,

and suspended Plaintiff until the fall of 2024.  Despite the open criminal charges against him, the

College refused Plaintiff's request to stay its own investigation or to reconsider its findings when

the criminal charges were dropped only days after the College issued its suspension.  Also during

the Spring 2022 semester, Plaintiff informed the College that he was being sexual harassed by

one of his professors.  Unhappy with the way the College handled Plaintiff's harassment

complaint against his professor, as well as the way it handled his own misconduct proceedings,

Plaintiff initiated the above-captioned action bringing claims for violations of Title IX and for

breach of contract.  The College has moved for summary judgment on these claims, which for the reasons set forth below, is denied as to the breach of contract claim but granted as to the Title IX claims.

## II.    BACKGROUND[1]

### A.    Undisputed Facts- Plaintiff's misconduct proceedings

Plaintiff enrolled at the College, a federally funded, private university,[2] in 2019.  He was a member of the College baseball team in 2022.  From March 11-19, 2022, the team attended a tournament in Winter Haven, Florida.  Plaintiff attended the trip.  On Monday, March 14, 2022, the team played an afternoon game.  After the game, Plaintiff and some teammates went to a restaurant to eat, which is where Plaintiff met Jane Roe.  That evening, Plaintiff had a sexual encounter with Jane Roe. The next day, March 15, 2022, Jane Roe, who was at the Lakeland Regional Health Hospital, made a sexual battery complaint.  The Winter Haven Police Department responded to take her report.  According to the Police Report, Jane Roe, who was sixteen-years old, stated that "she was vaginally raped by a 20-year-old baseball player."  The twenty-year-old baseball player Jane Roe was referring to was Plaintiff.

On March 16, 2022, detectives facilitated a controlled call between Jane Roe and Plaintiff.  The Police Report states: "[d]uring the recorded controlled phone call conversation, [Plaintiff] admitted to the following: [h]e confirmed he digitally penetrated her vagina while in her company, more than once (elevator, ride home, etc.); [h]e confirmed his penis did have union

---

[1]    The undisputed facts are taken from the College's Statement of Material Facts, *see* ECF No. 54-2, as admitted by Plaintiff, *see* ECF No. 59-3.  Any facts not taken directly from the College's Statement of Material Facts are identified herein with citation to the record.

[2]    Although the Statement of Material Facts does not state that the College is a federally funded, private university, none of the parties dispute these facts in their briefs.  To the contrary, their arguments are based on these facts as being true and undisputed.

with [Roe's] vagina; [h]e confirmed he knew she was sixteen (16) years old; [h]e stated [Roe] never said 'No' to having sex with him, but he did confirm she told him repeatedly she was 'uncomfortable.'" On March 18, 2022, detectives interviewed Plaintiff.  The Police Report states "[Plaintiff] admitted that [Roe] advised 'I'm kinda uncomfortable' and [Plaintiff] explained we can stop and she stated 'ok.' After making the statements listed above [Plaintiff] admitted to rubbing his unclothed penis against [Roe's] unclothed vagina…[Plaintiff] did advise he digitally penetrated [Roe's] vagina."  Plaintiff was then arrested and charged with Sexual Battery of a minor. He returned home two days later.

On March 21, 2022, the College's Dean of Students,[3] Colette Shaw, spoke to Plaintiff on the phone and informed Plaintiff he was allowed to return to campus but encouraged Plaintiff not to.  On March 23, 2022, Plaintiff contacted each of his professors, who agreed to work with Plaintiff to complete his courses virtually.  The next day, Lancaster Online published an article about Plaintiff: "Franklin & Marshall baseball player charged with assault of a minor in Florida." The article stated: "[p]olice allege that [Plaintiff] sexually assaulted the woman in the back of her car in a parking garage, despite repeated statements from the woman that she was uncomfortable. The police report states that [Plaintiff] was aware the woman was uncomfortable." The same day the article was published, Dean Shaw called Plaintiff to inform him that news of his arrest was spreading through campus. Dean Shaw also encouraged Plaintiff to "write down what he remembers while it [is] still fresh," and informed him that she would be engaging in a fact-gathering process.

On March 30, 2022, in response to Dean Shaw's request, the Winter Haven Police Department sent her the redacted police report, which did not disclose Jane Roe's identity to the

---

[3]      *See* Shaw Dec. ¶ 1, ECF No. 54-4

College.  Jane Roe's identity was unknown to the College.  On April 8, 2022, Dean Shaw emailed Plaintiff asking whether he wanted to participate in the College's "information gathering process" related to the allegations against him; Plaintiff replied stating he had no additional information to provide at that time.

In a letter dated April 22, 2022, Dean Shaw and Dean Jedrek Dineros informed Plaintiff that the College would be initiating an administrative review of the alleged misconduct.  Two days later, Plaintiff's attorney, Peter Heller, responded to the April 22 Letter, stating that he had he instructed Plaintiff not to participate in the College's investigation until the final disposition of his underlying criminal proceeding.  Attorney Heller did not provide any indication of how long he expected the criminal proceeding to last.  The April 22 Letter identified the Student Code of Conduct ("SCC") as the policy applicable to Plaintiff's alleged misconduct.  By April 2022, Plaintiff was familiar with the College's sexual misconduct policy.

On April 26, 2022, Dean Shaw emailed Plaintiff to inform him of the potential date for the administrative review meeting: May 3, 2022.  On April 28, 2022, Attorney Heller requested the College stay its misconduct proceedings in light of Plaintiff's ongoing criminal matter, but the College proceeded with its investigation and the May 3 meeting date.

The administrative review meeting was held on May 3, 2022.  Plaintiff did not attend the administrative review meeting, nor did he submit any evidence for the administrative review panel's consideration.  In a letter dated May 6, 2022, Plaintiff was informed of the outcome of the administrative review meeting, which found him responsible for the policies outlined in the April 22 Letter. The decisionmakers, Deans Shaw and Dineros, based their finding of responsibility on the evidence available to the College at the time of the administrative review meeting.

On May 10, 2022, the Polk County State Attorneys' Office issued a "No Bill" for Plaintiff's sexual battery charge. On May 13, 2022, Plaintiff submitted an appeal to the College of the finding of responsibility, attaching the No Bill as new evidence for consideration. On May 25, 2022, Margaret Hazlett, the Appeal Officer, affirmed the College's decision as to Plaintiff's finding of responsibility. Plaintiff was suspended for two years, running from May 2022 to May 2024, with an anticipated return date of Fall 2024. However, the College shortened Plaintiff's suspension and he is currently eligible to enroll in classes, without completing programs identified by the College: Educational Condition (Education on Consent and Boundaries), and a Reflection on Readiness to Return to the College. Plaintiff applied to transfer from the College to Fordham University, but did not gain admission to Fordham University.

**B.      Undisputed Facts- Sexual harassment by Dr. Kim**

During the Spring 2022 semester, Plaintiff was enrolled at the College in BOS 480, taught by Dr. Eunbi Kim. Plaintiff and Dr. Kim engaged in conversation via their personal and professional email accounts. Dr. Kim sent Plaintiff several inappropriate emails through her personal, non-College affiliated account between March 21, 2022, and April 12, 2022, which occurred simultaneously with the misconduct proceedings described above. The College was notified about Dr. Kim's behavior by Plaintiff's father, who contacted Dean Shaw on April 2, 2022. The matter was referred to Associate Dean of Faculty, Dr. Amelia Rauser.

At the request of Dr. Rauser, Plaintiff forwarded copies of Dr. Kim's emails to Dr. Rauser on April 4, 2022. On April 6, 2022, Dr. Rauser contacted Dr. Kim to notify her that Plaintiff would conclude BOS 480 under a different faculty member. That day, Plaintiff was assigned to complete BOS 480 with Professor William Schneper. Dr. Rauser suggested to Plaintiff that he block Dr. Kim's personal email address so he would not receive emails from her

personal email address.  The College, although having disciplinary control over the actions of its

faculty members, does not control Dr. Kim's private email or her ability to send email to third

parties. Plaintiff did not block Dr. Kim's personal email address.

On April 4, 2022, Dr. Kim emailed Plaintiff twice from her personal email account.  At

5:11 P.M., she wrote:

> I'm very sorry I said all those awful things to you, didn't believe you have a
> personal matter, and may have made you feel very uncomfortable. I'm really sorry
> that I acted in a horrible way that may have hurt you further.
> I don't know what else to say. I'm just very concerned about you. I hope you are
> okay and everything goes well. Please take good care of yourself and let me know
> if you need anything. I'm really sorry about all that I did or said to you.

Mohr Dec. at Ex 34, ECF No. 59-1.  In an email sent at 11:45 P.M., Dr. Kim wrote:

> I really don't know what to say or where to start but I needed to email you again.
> I'm sorry I have to bother you again. I'm very sorry that I got you all wrong. I was
> just so preoccupied with my own problem and wasn't even thinking that I was
> hurting you so much. I'm so sorry. I realized that you tried to come back to campus
> for a meeting with me after your parents bailed you out. I'm sorry I didn't know
> that you were making much effort to see me when you have a lot going on. I'm
> sincerely regretful that I jumped the gun on judging you that you were trying to
> give me a hard time when it was actually the opposite.
> I know it's my personal issue that I have become very sensitive and paranoid,
> working at F&M over the years. I better understand now you went above and
> beyond several times to show me that you care about our relationship, making time
> and efforts for me. I feel awful that I didn't realize that for so long. I'm just really
> dumb and stupid.
> I was just a bit afraid that I felt too close to you sometimes even when you are not
> around. I was worried that I might say or act in an appropriate way and make things
> awkward for you like the guy did to me. You are not only much younger than me
> but also my student. I didn't want to use my power/authority to put you in a situation
> that you might feel uncomfortable with. That's why I wanted to see you in the
> classroom rather than in the office. It wasn't about you but rather about me. I
> wanted to push you away until I can act much friendlier. I'm sorry that my attitude
> and behavior may have hurt you and that I blamed you instead.
> I'm really worried about you. I hope it wasn't anything serious that could cause you
> any future problem. Please write to me when you feel ready to start talking to me
> again. I hope to know you are okay. If I don't hear from you ever, I'll just shoot
> myself. I'm truly sorry about my immaturity and inconsiderateness. I'm a total jerk.

*Id.* at Ex. 35.

By April 6, 2022, the matter had been referred to Dr. Snider (now Buchkoski), the College's Title IX Coordinator.  *See* Buchkoski Dec. ¶ 11 and Ex. 5, ECF No. 54-6.  On April 6, 2022, Dr. Snider requested a meeting with Plaintiff regarding the emails he received from Dr. Kim. Plaintiff wrote by email that he did not want to meet with Dr. Snider because he felt that the emails were self-explanatory and preferred to communicate via email. On April 7, 2022, Dr. Snider sent questions via email to Plaintiff about his correspondence with Dr. Kim, which Plaintiff answered.  On April 12, 2022, Dr. Snider emailed additional questions to Plaintiff, to which he did not respond.  *See id.* at ¶ 17.

On April 12, 2022, Dr. Kim sent Plaintiff another email, with the subject line "hi there, dummy," stating:

> Your friend told me you said to them that you did it but I don t believe you or him. You probably just wanted to bluff because of your performance at the game that day. Getting plunked is not your fault, you cannot blame yourself and do something stupid, Stay calm and strong when people turn their back on you. Sometimes, time will help. Otherwise, you should be glad to sort people out. There will always be a few who truly care about you and stick around, like your parents And you promised me that you would take me to the construction site. I cannot hang out with you if the record says you are a rapist. - - Defense is much more difficult than offense in most cases but you still need to proactively defend yourself. Hope you have hired a good lawyer who can do that on your behalf. I really need to see the construction site. I've never been to those places and haven t seen people building things. Keep the promise in the summer, okay In the meantime, you should keep up with school. You cannot lose your reputation among faculty. You need to come back to campus in the fall. Be an excellent student, as you've always been.

Mohr Dec. at Ex. 40.

Between April 28, 2022, and August 15, 2022, Dr. Kim had no teaching responsibilities at the College because she requested voluntary medical leave during that time.  On September 30, 2022, while Dr. Kim was still on leave, then-Provost and Dean of Faculty, Cameron Wesson, sent a memorandum to the Professional Standards Committee outlining inappropriate conduct by Dr. Kim, including her interactions with Plaintiff.  On November 10, 2022, Dr. Kim was notified

that she was being placed on administrative leave throughout the pendency of her disciplinary proceedings. Dr. Kim was relieved of her teaching duties, denied access to campus, and instructed not to communicate with College faculty.

On January 24, 2023, Dr. Kim was notified that the College was initiating formal proceedings for her dismissal. In response, Dr. Kim requested a hearing. On February 22, 2023, the Chair of the Judicial Committee notified Dr. Kim the Judicial Committee would hold a hearing in her case. On March 7, 2023, the Judicial Committee invited Plaintiff to participate in Dr. Kim's hearing to discuss Dr. Kim's misconduct against him. Plaintiff did not respond to the Judicial Committee's outreach, nor did Plaintiff participate in any hearing regarding Dr. Kim. On March 10, 2023, Dr. Kim's employment with the College was terminated effective June 30, 2024.

### C.      Undisputed Facts- Applicable policies/contracts

The Student Code of Conduct ("SCC") outlines the administrative disciplinary procedures. *See* SCC 27, Shaw Dec. at Ex. 1, ECF No. 54-4. The general procedures are as follows:

1. The student will receive a request in written form, by email, or by telephone to meet or have an appointment scheduled to meet with an Administrative Officer.
2. At the meeting with the Administrative Officer, the student will be informed of the reason for the meeting.
3. Others present may include a support person, witnesses, representatives from the Committee on Student Conduct and liaisons with specific knowledge important to the case.
4. The student will be asked for his or her account of the incident(s).
5. The student may request to review the Incident Report, if applicable.
6. If a violation of the Student Code has occurred, the Administrative Officer will discuss with the student the impact of their behavior and any necessary follow-up.
7. Students are not presumed to be in violation of the Student Code; however, Administrative Officers are empowered to make decisions whether or not a violation of the Student Code has occurred.

8. At the conclusion of the meeting, if a decision has been reached by the Administrative Officer, the student will be informed of that decision and the sanction, if any. The student will also receive written verification of that decision in a timely fashion. If the Administrative Officer is not able to arrive at a decision at the conclusion of the meeting, the student will be informed of the outcome in written form in a timely fashion. A copy of this letter will be placed in the Student File.

SCC 27-28.  These procedures are silent as to whether a transcript or recording of the review meeting will be created and are silent as to whether an investigation report following the fact-gathering process will be created.  Per the SCC, an appeal may be sought "[o]n a claim of new evidence, information, or material that was not available at the time of the disposition and is relevant to the case. The decision of whether there are grounds for appeal is at the sole discretion of the appeal officer."   SCC 36.

The SCC incorporates the College's Community Standards Sexual Misconduct policy, which addresses non-Title IX sexual misconduct.  *See* SCC 16-19.  In proceedings under the Community Standards Sexual Misconduct process, the parties have the following rights, *inter alia*:

- The right to a prompt, fair and equitable process and the College will follow these procedures before the imposition of any disciplinary sanctions or other actions that are not interim or supportive measures against a respondent.
- The right to an objective evaluation of all relevant evidence. The parties will be provided with an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in a complaint.
. . .
- The right to a process that is free from conflicts of interest or bias.

SCC 18. The Community Standards Sexual Misconduct states that "there may be circumstances when the College may need to temporarily delay its investigation while law enforcement gathers evidence. However, the College will generally proceed even during the time of a pending law enforcement investigation."  SCC 19.

The College's Community Standards Sexual Misconduct policy includes links to the College's Title IX Sexual Harassment and Sexual Misconduct Policy. *See* SCC 19; Policy, Buchkoski Dec. at Ex. 1. The Title IX Policy identifies Katharine J. Buchkoski, Ph.D. as "responsible for coordinating Franklin & Marshall's efforts to comply with Title IX and this Policy." Policy 1. The section on Reporting states:

> Any person may report conduct constituting possible Prohibited Conduct to the Title IX Coordinator in person, by mail, by telephone, by email or via the online reporting form (https://cm.maxient.com/reportingform.php?FranklinMarshall&layout_id=3). The Title IX Coordinator will promptly contact the Complainant to discuss the availability of Supportive Measures (see Section IX) and to explain the process for filing a Formal Complaint.
>
> Complainants are encouraged, but not required, to proceed with a Formal Complaint. If the Complainant desires to proceed with a Formal Complaint, the Title IX Coordinator or designee will begin the Formal Complaint Processes (see Section XI). If the Complainant decides not to submit a Formal Complaint, the Title IX Coordinator may sign a Formal Complaint when the Title IX Coordinator deems doing so necessary to address the possible Prohibited Conduct, including in order to provide a safe and nondiscriminatory environment for all members of Franklin & Marshall's community. In deciding whether to sign a Complaint if the Complainant elects not to do so, the Title IX Coordinator may, but is not required to, consider factors such as whether the conduct alleged included threats, violence, serial predation or weapons. A Complainant is not required to submit a Formal Complaint in order to receive Supportive Measures.

Policy 6. For a disclosure to constitute actual notice to the College, "triggering its response obligations under this Policy, depends on the role of the employee to whom the disclosure is made. . . . A disclosure or report of Prohibited Conduct made to an Authorized Employee (regardless of whether the disclosure is made by the Complainant or a third party) constitutes a report to Institution (i.e., actual knowledge), triggering a response under this Policy." *See* Policy 6-7. Authorized Employees include, *inter alia*, the Title IX Coordinator and the Dean of Students. *See id.*

### D.        Procedural History

Plaintiff initiated the above-captioned action on March 10, 2023.  *See* ECF No. 1.  After receipt of a motion to dismiss, Plaintiff filed an Amended Complaint on May 20, 2023.  *See* ECF No. 18.  The Amended Complaint asserted violations of Title IX arising from the allegedly erroneous outcome of his misconduct proceedings, the College's allegedly selective enforcement of its misconduct policies against him, and the College's alleged deliberate indifference to the sexual harassment he endured from Dr. Kim, as well as a breach of contract claim based on the College's alleged breach of its own policies.  *See id.*  The Title IX claims were dismissed with prejudice on September 6, 2023, following a motion to dismiss.  *See* ECF Nos. 24-25.  But on October 17, 2023, reconsideration was granted to the extent the dismissal was with prejudice and Plaintiff was granted leave to file a Second Amended Complaint.  *See* ECF Nos. 31-32.

Plaintiff filed a Second Amended Complaint on October 31, 2023, which is the operative complaint.  *See* Am. Compl., ECF No. 33.  The Second Amended Complaint brings two counts: (1) Title IX violations arising primarily from his misconduct proceedings, and (2) breach of contract claim based on the College's alleged breach of its own policies relating to his misconduct proceedings and complaint of sexual harassment.  *See id.*  A motion to dismiss was denied, *see* ECF No. 40, and the College filed an Answer, *see* Am. Compl., ECF No. 41.  The matter proceeded to discovery.  Currently pending is the College's Motion for Summary Judgment.  *See* SJ Mot., ECF No. 54.  *See also* SJ Opp., ECF No. 59; SJ Reply, ECF No. 63.

## III.    LEGAL STANDARDS

### A.        Summary Judgment – Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A disputed fact is "material" if proof of its existence or nonexistence might affect the

outcome of the case under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  An issue of material fact is "genuine" if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.  *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a

genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once

such a showing has been made, the non-moving party must go beyond the pleadings with

affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific

material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the

non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts").  The party opposing the motion must produce evidence to show the

existence of every element essential to its case, which it bears the burden of proving at trial,

because "a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  The court must

consider the evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550

U.S. 372, 378 (2007).

**B.     Title IX**

The relevant portion of Title IX states that "[n]o person in the United States shall, on the

basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial assistance."

20 U.S.C. § 1681(a).  "Title IX implies a private right of action and [] monetary damages are

available in such suits. . . . [P]rivate damages actions are available only where recipients of

federal funding had adequate notice that they could be liable for the conduct at issue." *Hall v. Millersville Univ.*, 22 F.4th 397, 403-04 (3d Cir. 2022) (internal quotations omitted).

"'Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline.'" *Doe v. St. Joseph's Univ.*, 832 F. App'x 770, 773 (3d Cir. 2020) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).  To state a claim, the plaintiff must show "that a federally-funded college or university discriminated against a person on the basis of sex."  *See Doe v. Univ. of the Scis.*, 961 F.3d 203, 209 (3d Cir. 2020).

Title IX also precludes deliberate indifference to known sexual harassment.  The plaintiff must establish: (1) the defendant-school received federal funds; (2) sexual harassment occurred; (3) the defendant-school exercised substantial control over the harasser and the context in which the harassment occurred; (4) the defendant-school had actual knowledge of the harassment; (5) the defendant-school was deliberately indifferent to the harassment; and (6) the harassment was so severe, pervasive, and objectively offensive that it deprived the plaintiff of access to the educational opportunities or benefits provided by the school.  *See Hall*, 22 F.4th at 408.  In determining the third element (control), the inquiry is not limited to whether the school had "formal disciplinary authority, but a broader examination of the degree of control [the school] had over [the harasser] and its ability to take remedial action."  *See id.* at 409.  Under the fifth element, deliberate indifference to harassment is found "only where the [school's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."  *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648-49 (1999).  "If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment. That is, the deliberate indifference must, at a minimum, cause [students] to undergo harassment or make them liable or vulnerable to it."  *Id.* at

644-45.  "This causation element results in a requirement that harassment, or the likelihood or vulnerability of a student to be subjected to it, must occur subsequent to an official's decision not to remedy a known violation."  *Swanger v. Warrior Run Sch. Dist.*, 346 F. Supp. 3d 689, 705 (M.D. Pa. 2018).

### C.        Breach of Contract Involving Private Schools – Review of Applicable Law

"Under Pennsylvania law, three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms[;] (2) a breach of the contract; and[ ] (3) resultant damages."  *Univ. of the Scis.*, 961 F.3d at 211 (cleaned up).  A "contract is formed when the parties (1) reach a mutual understanding, (2) exchange consideration, and (3) delineate the terms of the bargain with sufficient clarity."  *Tuff Wrap Installations Inc. v. Cleanwrap, Inc.*, No. 11-2576, 2011 U.S. Dist. LEXIS 70543, at *18 (E.D. Pa. June 29, 2011) (citing *Weavertown Transport Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003)).

In Pennsylvania, "the relationship between a student and a private educational institution is contractual."  *Brezinski v. Widener Univ.*, 582 F. Supp. 3d 257, 265 (E.D. Pa. 2022).  "The contract between a private institution and a student is comprised of written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution."  *Kimberg v. Univ. of Scranton*, No. 3:06CV1209, 2007 WL 405971, at *3 (M.D. Pa. Feb. 2, 2007) (citation omitted).  "A student can bring a cause of action against [a private educational institution] for breach of contract where the institution ignores or violates portions of the written contract.  *Id.* (citation omitted).

IV.     **ANALYSIS**

A.     **Summary judgment is granted as to the Title IX claim regarding Plaintiff's misconduct proceedings.**

There is no dispute that the College receives federal financial assistance under Title IX and that, by suspending Plaintiff, it "excluded [him] from participation in [or] denied [him] the benefits of . . . [an] education program." *See Univ. of the Scis.*, 961 F.3d at 209.  The issue is if there is a dispute of fact as to whether sex was a motivating factor in the College's disciplinary decision(s).

Plaintiff asserts that he has presented circumstantial evidence of gender bias precluding summary judgment.  He points to: (1) pressure from the federal government and student body, (2) the College's statements allegedly embracing male stereotypes, (3) alleged procedural irregularities in the disciplinary process, (4) the College's comparative treatment of a female student that was arrested, and (5) the College's comparative treatment of his sexual harassment complaint against Dr. Kim.  *See* SJ Opp. 5-24.  These arguments are generally based on erroneous outcome and selective enforcement theories.

First, as to the 2011 Dear Colleague Letter and 2014 guidance from the Department of Education ("DoEd"), *see* SJ Opp. 8-14, "allegations about pressure from DoEd and the 2011 Dear Colleague Letter cannot alone support a plausible claim of Title IX sex discrimination," let alone survive summary judgment, *see Univ. of the Scis.*, 961 F.3d at 210.  This general "pressure" impacts all colleges and is not specifically based on gender.  *See St. Joseph's Univ.*, 832 F. App'x at 774-75 (determining that "[w]hile some courts have properly pointed to internal or external pressure when evaluating gender bias, those cases all contained indicia of specific intent to punish male students.").  Pressure on the College from a petition asking the College to ban a particular fraternity due to complaints of sexual assault by its members is also not evidence

of gender bias because it was based, not on the gender of the fraternity, but on its members'
alleged tendency to commit sexual misconduct.  *See Doe v. Rider Univ.*, No. 3:16-cv-4882-
BRM-DEA, 2018 U.S. Dist. LEXIS 7592, at *26-27 (D.N.J. Jan. 17, 2018) (citing "*King v.
DePauw Univ.*, No. 14-70, 2014 U.S. Dist. LEXIS 117075 (S.D. Ind. Aug. 22, 2014)
(demonstrating a bias against students accused of sexual assault is not the equivalent of
demonstrating a bias against males, even if all of the students accused of assault were male)").

As to Plaintiff's assertion that the College made biased statements embracing gender
stereotypes, and painting males as perpetrators of sexual misconduct, *see* SJ Opp. 14-17, he
misconstrues the evidence.  Contrary to Plaintiff's suggestion, advocating for survivors of sexual
assault, encouraging a "come forward" culture, and the "take back the night" rallies, is gender
neutral.  "[C]ourts have stressed that '[d]emonstrating that a university official is biased in favor
of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the
equivalent of demonstrating bias against male students."  *See Rider Univ.*, 2018 U.S. Dist.
LEXIS 7592, at *26-27 (internal quotations omitted).

Plaintiff also contends there were a number of alleged procedural irregularities in his
disciplinary proceedings: the College's (1) refusal to stay the proceedings, (2) failure to provide
an investigation report and evidence, (3) failure to provide a transcript of the disciplinary
hearing, and (4) refusal to grant an appeal.  *See* SJ Opp. 17-18, 23-24.  However, "[m]ere
allegations a flawed proceeding led to an adverse and erroneous outcome combined with a
conclusory allegation of gender discrimination does not satisfy an erroneous outcome claim."
*Saravanan v. Drexel Univ.*, No. 17-3409, 2017 U.S. Dist. LEXIS 193925, at *9 (E.D. Pa. Nov.
24, 2017) (internal quotations omitted).  Although some of the alleged irregularities may give
rise to a breach of contract claim, which is discussed below, there is no evidence of a clear

procedural violation or anything to show that the College's decisions were influenced by gender. Initially, the Court notes that the College's decision to initiate disciplinary proceedings against Plaintiff based on conduct that occurred while he was on a school-sponsored baseball trip followed his arrest on Sexual Battery charges.  News of his arrest spread through campus and even though Jane Roe did not file a complaint, it was within the College's purview to review Plaintiff's behavior.  *See* SCC 16 ("Community Standards Sexual Misconduct includes behavior by an individual or a student organization that . . . has adverse effects on, or creates a hostile environment for, individuals participating or attempting to participate in Franklin & Marshall's education program or activity, or otherwise has a reasonable connection to F&M.").  As to the refusal to stay the proceedings, the Community Standards Sexual Misconduct states that ". . . the College will generally proceed even during the time of a pending law enforcement investigation."  *See* SCC 19.  The College's decision was therefore not an "irregularity" and nothing in its decision to follow the general process shows gender bias.  Similarly, because the procedures are silent as to whether a transcript of the review meeting will be created and/or whether an investigation report following the fact-gathering process will be created, there was no "irregularity" in failing to provide the same as to suggest any gender motivation.  Finally, there is nothing in the refusal to grant an appeal, which was discretionary, to show gender bias.  *Cf.* SCC 36 ("A review may follow from a finding that new evidence not available at the original disposition exists but only upon remand for additional consideration."), *with* SCC 19 ("Neither law enforcement's decision whether to prosecute, nor the outcome of any criminal prosecution, is determinative of whether sexual misconduct has occurred under this policy.").

Next, Plaintiff points to evidence that a College professor supported a female student who was arrested for felony arson, institutional vandalism, riot, failure to disperse, obstructing

highways and other public passages, disorderly conduct, and defiant trespass.  *See* SJ Opp. 14-17.  To prevail under a selective enforcement theory, a plaintiff must show "'the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender'" *See Verdu v. Trs. of Princeton Univ.*, No. 19-12484 (FLW), 2020 U.S. Dist. LEXIS 54293, at *18 (D.N.J. Mar. 30, 2020) (quoting *Yusuf*, 35 F.3d at 715).  The male plaintiff "must identify a similarly situated female student treated less harshly." *St. Joseph's Univ.*, 832 F. App'x at 773.  This female student's circumstances, including the facts surrounding the arrest and the nature of the charges, are so different that she is not a useful comparator.  *See Verdu*, 2020 U.S. Dist. LEXIS 54293, at *20-21 (explaining that when a claim of gender bias is based on a comparison of two individuals, such persons- one male and one female- must be similarly situated).

Finally, the College's comparative treatment of Plaintiff's disciplinary proceedings and of his sexual harassment report against Dr. Kim do not show gender bias.  Dr. Kim is not a valid comparator because a professor and an undergraduate student "hold unquestionably different roles and levels of authority" and are not "sufficiently alike to be considered valid comparators." *See Verdu v. Trs. of Princeton Univ.*, No. 20-1724, 2022 U.S. App. LEXIS 27136, at *11 (3d Cir. Sep. 27, 2022).  Furthermore, there is nothing comparatively suggestive in the College's decision to initiate proceedings against Plaintiff but allegedly[4] not against Dr. Kim because Jane Roe, who did not attend the College and lived in Florida, was unlikely to initiate the sexual misconduct review process, while Plaintiff, a student at the College, had the ability to file a Formal Complaint against Dr. Kim, but did not.[5]  Without a Formal Complaint, the College was not required to follow a particular investigative path as to Dr. Kim.  Moreover, the College's

---

[4]     As discussed below, Plaintiff never filed a Formal Complaint against Dr. Kim but the College nevertheless eventually referred her conduct to the Professional Standards Committee.
[5]     This issue is discussed in more detail in the breach of contract section.

handling of the sexual harassment report, which is discussed below, was not deliberately indifferent.

For all these reasons and even after considering the evidence collectively, The Court finds that Plaintiff has not provided evidence to create a genuine dispute of material fact showing that the College's disciplinary decisions were motivated by gender. Summary judgment on this claim is granted.

**B.     Summary judgment is granted as to the Title IX claim regarding Plaintiff's report of sexual harassment by Dr. Kim.**

There is no dispute that the College received federal funds or that, as of April 2, 2022, it was on notice of Dr. Kim's allegedly sexually harassing behavior. Plaintiff has also presented evidence raising a genuine dispute of material fact as to whether Dr. Kim's behavior was sexual harassment and whether the College had control over Dr. Kim and her personal email account in light of its disciplinary authority over Dr. Kim. *See Hall*, 22 F.4th at 409 (concluding that there was a genuine issue of fact as to whether the school had control over the harasser, a guest visiting the school dormitory, despite the fact that the alleged harassment occurred in a private dorm room because the school had control over its campus). Whether the harassment was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to the educational opportunities or benefits provided by the College is a closer question. Plaintiff suggests that he was forced to leave the College but in light of his own disciplinary proceedings, it is doubtful that this decision was a result of Dr. Kim's harassment. Regardless, Plaintiff has failed to present evidence that the College's response was clearly unreasonable.

The undisputed facts show that the College was first notified of Dr. Kim's harassment on Saturday, April 2, 2022. On Monday morning,[6] April 4, 2022, Dean Shaw referred the matter to Dr. Rauser. The same day, Dr. Rauser spoke with Plaintiff's father, who had reported the harassment, and requested copies of Dr. Kim's emails from Plaintiff, which Dr. Rauser received that afternoon.[7] Two days later, on April 6, 2022, Plaintiff was removed from Dr. Kim's BOS 480 course and assigned to complete the course under a different faculty member. Also on April 6, 2022, at 8:52 A.M.,[8] the College's Title IX Coordinator reached out to Plaintiff and requested a meeting. Plaintiff responded that he did not want to meet and preferred to communicate via email. The next day, April 7, 2022, the College's Title IX Coordinator sent questions to Plaintiff about his correspondence with Dr. Kim, which Plaintiff answered. She sent additional questions on April 12, 2022, but Plaintiff did not respond.

The College's response to the Saturday report involved referrals to Dr. Rauser first thing Monday morning and then, less than forty-eight (48) hours thereafter, to the Title IX Coordinator. The same day as the matter was referred to each, Dr. Rauser and the Title IX Coordinator reached out to Plaintiff and sought additional information in order to investigate the report. The College's prompt referrals and requests for information were reasonable. *See Doe v. N. Penn Sch. Dist.*, 636 F. Supp. 3d 519, 528 (E.D. Pa. 2022) ("Courts have noted that a reasonable response includes a prompt inquiry into the matter."). Plaintiff's suggestion that the College completely failed to investigate is contradicted by the evidence. The Title IX Coordinator also sought additional information on April 12, 2022, but Plaintiff failed to respond.

---

[6]     *See* Shaw Dec. at Ex. 10 (email copied to Dr. Rauser at 9:14 A.M.)
[7]     *See* Rauser Dec. at Ex. 2, ECF No. 54-5 (emails received at 3:32 and 3:33 P.M.)
[8]     *See* Buchkoski Dec. at Ex. 4

Without Plaintiff's cooperation and in the absence of a Formal Complaint,[9] the College's failure to immediately do more was not clearly unreasonable under the circumstances.

Moreover, the College took steps to protect Plaintiff from further harassment. Specifically, by Wednesday of that first week, Plaintiff was removed from Dr. Kim's class and assigned to complete his course under a different faculty member. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 456 n.12 (5th Cir. 1994) (explaining that deliberate indifference will often be a fact-laden question and it could "foresee many good faith but ineffective responses that might satisfy a school official's obligation in these situations, e.g., . . . removing the student from the teacher's class"). Additionally, Dr. Rauser advised Plaintiff to block Dr. Kim's personal email address so that he would not receive any more emails from Dr. Kim as the College did not monitor the personal email accounts of faculty. Plaintiff chose not to do so and, on April 4 and 12, 2022, received additional emails from Dr. Kim. Whether these emails, which are largely apologetic, are harassing is not entirely clear. Regardless, a school is not required to eradicate all sexual harassment. *Swanger*, 346 F. Supp. 3d at 705-06. Plaintiff complains that the College did not notify Dr. Kim of the report against her but "[t]he fact that the appropriate person's initial response does not remedy or prevent the harassment, or that the school does not use a particular method to remedy or prevent the harassment, does not provide sufficient grounds for liability."

---

[9]     The College asserts that its "Title IX policy states explicitly that if a person who has experienced misconduct wishes for the College to pursue a formal investigation, the person must file a Formal Complaint." *See* College Stmt ¶ 84 (citing Buchkoski Dec. Ex. 1 at 10). However, the Policy also provides: "if the Title IX Coordinator has received a report of Prohibited Conduct, but the Complainant elects not to submit a Formal Complaint or the Complainant is unknown, the Title IX Coordinator has the discretion to sign the Complaint if the Title IX Coordinator deems doing so necessary to address Prohibited Conduct, including in order to provide a safe and nondiscriminatory environment for all members of its community." *See* Policy 10. Plaintiff, who was familiar with this Policy, asserts that the College should have initiated a Formal Complaint. The Policy is clear, however, that this option is in the "discretion" of the Title IX Coordinator.

*Id.* (citing *Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001)).  The evidence does not show that the College caused Plaintiff to undergo Dr. Kim's harassing emails on April 4 and 12, 2022, nor did it make him vulnerable to such harassment.  *See Davis*, 526 U.S. at 644-45.

Although there was delay before Dr. Kim's disciplinary proceedings, she had no teaching responsibilities at the College after April 28, 2022, the end of the spring semester.  Near the beginning of the fall semester, while Dr. Kim was still on voluntary medical leave, her conduct was referred to the Professional Standards Committee.  On November 10, 2022, Dr. Kim was notified that she was being placed on administrative leave throughout the pendency of her disciplinary proceedings.  She was also relieved of her teaching duties, denied access to campus, and instructed not to communicate with College faculty.  On January 24, 2023, Dr. Kim was notified that the College was initiating formal proceedings for her dismissal and a hearing was thereafter scheduled at her request.  On March 10, 2023, Dr. Kim's employment with the College was terminated effective June 30, 2024.  Considering the timing relative to the College's semesters, Dr. Kim's medical leave beginning at the end of April 2022, and in the absence of any suggestion that Plaintiff was prejudiced by the delay, the evidence does not show that the College's delay was deliberately indifferent.  *See Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089-90 (9th Cir. 2006) (holding that the district court properly granted summary judgment in favor of the defendants on the Title IX claim that the College reacted with deliberate indifference to the student's allegations of sexual harassment by her professor by delaying the formation of a committee and the commencement of a hearing from April 1996 to January 1997 where "the record fails to demonstrate that the delay was more than negligent, lazy, or careless" and there was no evidence the delay prejudiced  the plaintiff).

Summary judgment on the Title IX claim for deliberate indifference is granted.

**C.     Summary judgment is denied as to the breach of contract claim regarding Plaintiff's misconduct proceedings.**

The College's Student Code of Conduct and Community Standards Sexual Misconduct policy promised Plaintiff a "fair and equitable process."  *See* SCC 18.  "The contract between an educational institution and a student includes any 'agreement between the parties concerning disciplinary procedures, contained within a portion of the student handbook.'"  *Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 810 (E.D. Pa. 2017) (quoting *Reardon v. Allegheny College*, 926 A.2d 477, 480 (Pa. Super. Ct. 2007) (citation omitted)).  Plaintiff has presented evidence creating a genuine dispute of material fact as to whether he was provided a "fair and equitable process" as he was not able to put on a defense at the misconduct hearing without forgoing his Fifth Amendment rights related to the pending criminal litigation.  He did, however, agree to participate as soon as the criminal investigation concluded.  *See* Pl. Dep. 81:5-20, Richards Dec. Ex. 3, ECF No. 54-8.  Plaintiff's attorney, who would not allow Plaintiff to participate in the misconduct proceedings while the criminal case was ongoing, asked the College to defer the hearing so that Plaintiff could testify, present evidence, and challenge the evidence and credibility of the witnesses, but it refused.  If the College had postponed the hearing for just two weeks, Plaintiff would have been able to put on a defense.  Although the College was not obligated to continue the hearing, whether the College's refusal to do so was "fair" is a question for the jury.  *See Univ. of the Scis.*, 961 F.3d at 214 (concluding that "notions of fairness in Pennsylvania law include providing the accused with a chance to test witness credibility through some form of cross-examination and a live, adversarial hearing during which he or she can put on a defense and challenge evidence against him or her").

Jury questions of fairness and breach also arise when considering that no witnesses testified at the misconduct hearing.  *See* Shaw Dep. 41:15-17, Mohr Dec. at Ex. 21, ECF No. 59-

1.  The College promised Plaintiff a "right to an objective evaluation of all relevant evidence." *See* SCC 18.  Plaintiff's version of the events regarding his encounter with Jane Roe, especially in the absence of any witness testimony, was clearly "relevant" but could not be considered unless Plaintiff forfeited his constitutional rights.  Instead, the College considered the "evidence within the College's possession, including the police report and witness statements."  *See* Shaw Dec. ¶ 44, ECF No. 54-4.  Whether the College fulfilled its promise to consider "all relevant evidence" is a question for the jury.

Additionally, the evidence the College did consider was not produced to Plaintiff despite repeated requests.  *See* Pl. Dep. 126:18 – 138:4 (stating that more than once, "we asked for any documentation or evidence that was used in said hearing so I could prepare properly," but it was never produced by the College); Pl. Dec. ¶ 37 (declaring that he "never received an investigation report or was given the ability to review the evidence that the College had collected and was going to use at the hearing").  Although the SCC does not promise that an investigation report will be created, Plaintiff has nevertheless created a genuine dispute of material fact as to whether the College breached the Student Code of Conduct promising Plaintiff "an equal opportunity to inspect and review any evidence obtained as part of the investigation" by refusing to provide him with any evidence the College considered.

Summary judgment on this claim is denied.

**D.      Summary judgment is denied as to the breach of contract claim regarding Plaintiff's report of sexual harassment by Dr. Kim.**

The College argues that summary judgment should be granted to the extent the breach of contract claim is based on a violation of the Title IX policy arising from the College's response to reports of Dr. Kim's harassment because, the College contends, the Title IX policy required Plaintiff to file a formal complaint, which he did not file.

The College asserts that it had no duty to investigate because its "Title IX policy states explicitly that if a person who has experienced misconduct wishes for the College to pursue a formal investigation, the person must file a Formal Complaint."  *See* College Stmt ¶ 84 (citing Policy 10); SJ Mot. 26-27.  Regardless of whether Plaintiff filed a Formal Complaint,[10] the College's Title IX Policy also provides that upon receiving a report of conduct constituting possible Prohibited Conduct, the "Title IX Coordinator will promptly contact the Complainant to . . . explain the process for filing a Formal Complaint."  *See* Policy 6.  Although there is no dispute that the Title IX Coordinator promptly contacted Plaintiff after his father reported the sexual harassment by Dr. Kim, Plaintiff declares that neither the Title IX Coordinator nor any other administrator at the College explained to him the process of filing a formal complaint.  *See* Doe Dec. ¶ 63, ECF No. 59-2.  Plaintiff has therefore created a genuine dispute of material fact as to whether the College breached the Title IX Policy.  *See Univ. of the Scis.*, 961 F.3d at 212 (considering the college's promises in its student handbook and sexual misconduct policy as contractual); *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. 1999) ("The contract between a private institution and a student is comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution.").

Summary judgment is denied on the breach of contract claims.

## V.   CONCLUSION

For the reasons set forth herein, summary judgment is granted in favor of the College on the Title IX claims.  As to the claim based on the disciplinary proceedings against Plaintiff, there is no evidence showing that the College's decisions were motivated by sex.  Plaintiff also failed

---

[10]      *See* footnote 9, *supra*

to show that the College was deliberately indifferent because the evidence establishes that the College promptly referred the complaint to the appropriate school employee and its Title IX Coordinator, each of whom spoke with Plaintiff and sought information about the alleged harassment, and the College sought to protect Plaintiff from further harassment by removing him from Dr. Kim's class and recommending that he block Dr. Kim's personal email.

Conversely, there are genuine issues of material fact on the breach of contract claims. Specifically, Plaintiff has presented evidence creating a genuine dispute of material fact as to whether he was provided a "fair and equitable process," as promised in the College's Student Code of Conduct, and as to whether the College breached the Student Code of Conduct giving Plaintiff "an equal opportunity to inspect and review any evidence obtained as part of the investigation." He has also presented evidence that the College, by failing to inform him of the procedure to file a Formal Complaint, breached its Title IX Policy. Summary judgment on the breach of contract claims is therefore denied.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge